**In re ORION PICTURES
CORPORATION,
Debtor,**

**ORION PICTURES CORPORATION,
Plaintiff–Appellee,**

v.

**SHOWTIME NETWORKS, INC., formerly
known as Showtime/The Movie Channel,
Inc., Defendant–Appellant.**

No. 1474, Docket 93–5002.

United States Court of Appeals,
Second Circuit.

Argued June 7, 1993.

Decided Sept. 17, 1993.

R. Paul Wickes (Shearman & Sterling, New York City, of counsel) for defendant-appellant.

Francis J. Menton, Jr. (Marc Abrams, Blake A. Bell, Gregory M. Cooke, Kim A. Berger, Willkie Farr & Gallagher, New York City, of counsel) for plaintiff-appellee.

Before: OAKES, WALKER, and WOOD,* Circuit Judges.

WALKER, Circuit Judge:

Defendant–Appellant Showtime Networks Inc. ("Showtime") appeals from a judgment of the United States District Court for the Southern District of New York (John S. Mar-

* Hon. Harlington Wood, Jr., United States Court of Appeals for the Seventh Circuit, sitting by designation.

tin, Jr., *Judge* ), affirming orders of the United States Bankruptcy Court (Burton R. Lifland, *Chief Judge* ), which granted Plaintiff-Appellee Orion Pictures Corp.'s ("Orion") motion to assume an agreement between Orion and Showtime and dismissing Orion's breach-of-contract adversary proceeding against Showtime. Showtime also challenges on this appeal the April 13, 1992 order of the United States District Court for the Southern District of New York (John F. Keenan, *Judge* ), denying Showtime's motion to withdraw the reference of the adversary proceeding to the bankruptcy court 139 B.R. 785.

The bankruptcy court held a hearing on both the motion to assume and the adversary proceeding on May 14 and 15, 1992. In deciding the motion to assume, the bankruptcy court found that Orion had not breached a "key-man" clause in its contract with Showtime. In light of this finding, it granted the motion to assume. Then, since the resolution of the key-man clause dispute was the sole issue in the adversary proceeding, the court dismissed the adversary proceeding "without prejudice as moot." The district court affirmed these rulings without discussion.

The issues before us are whether the bankruptcy court erred in deciding the adversary proceeding in the context of deciding the motion to assume and whether the district court erred in denying Showtime's motion to withdraw the reference of the adversary proceeding.

## BACKGROUND

Orion is a producer and distributor of motion pictures. Showtime operates subscription cable services that show movies licensed from motion picture distributors. In 1986, Showtime and Orion entered into an agreement (the "Agreement"), which was essentially an output contract under which Showtime would license all films distributed by Orion without regard to their commercial success, provided they met certain criteria pertaining to matters such as advertising expenditures and theatrical releases. The Agreement contained a "key-man" clause that conditioned Showtime's performance on Orion's continued employment of at least two of four named Orion executives in their then-current or substantially similar positions.

In letters dated October 17, 1991, and November 20, 1991, Showtime notified Orion of its position that, due to various management changes at Orion that occurred in 1990 and 1991, Orion was in violation of the key-man clause beginning April 2, 1991. On December 11, 1991, Orion filed for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101–74. On December 24, 1991, Showtime notified Orion that because it believed Orion to be out of compliance with the key-man clause, it would not license the various films it would otherwise be obligated to accept under the Agreement.

On March 20, 1992, Orion filed a motion to assume the Agreement in the bankruptcy court pursuant to 11 U.S.C. § 365 (the "Motion to Assume"). Also on March 20, Orion filed an adversary proceeding in the bankruptcy court against Showtime (the "Adversary Proceeding"), claiming anticipatory breach of the Agreement, and seeking an order permitting Orion to assume the Agreement, declaratory relief setting forth the parties' rights and obligations, and specific performance of Showtime's obligations to make payments under the Agreement, or, alternatively, $77 million in damages for breach of contract.

On March 31, 1992, Showtime made a motion in the district court (Keenan, *J.*), to withdraw the reference of the Adversary Proceeding to the bankruptcy court (the "Motion to Withdraw"), arguing that since it was a non-core legal matter, the Adversary Proceeding should not be in the bankruptcy court. On April 2, Orion filed an amended complaint in the Adversary Proceeding, which omitted the claim for damages for Showtime's breach but retained the other three demands for relief. On April 13, the district court denied Showtime's Motion to Withdraw, finding that the Adversary Proceeding was a core proceeding.

On May 11, 1992, the bankruptcy court granted Orion's request to strike Showtime's demand for a jury trial in the Adversary Proceeding, on the ground that the Motion to Assume and the Adversary Proceeding were

really the same thing. The bankruptcy court stated that the two proceedings "require the Court to decide identical questions of fact and law.... [T]his adversary proceeding is nothing more than a motion to assume an executory contract." The court reasoned that since the Motion to Assume was unquestionably equitable, and the two motions were in effect the same, there was no right to a jury trial in the Adversary Proceeding.

The bankruptcy court held hearings on both the Motion to Assume and the Adversary Proceeding on May 14 and 15. During the hearings, Orion withdrew its demand for specific performance in the Adversary Proceeding, leaving only the request for assumption of the contract and a prayer for declaratory relief. At the close of the hearings on the two matters, the bankruptcy court ruled that Orion had not violated the key-man clause. Then, having held that Orion had not violated the clause, the court reasoned that it would be beneficial to Orion to assume the Agreement, since an enforceable Agreement would entitle Orion to $77 million.

With regard to the Adversary Proceeding, the court noted that while Orion had withdrawn the request for specific performance, "[n]evertheless, I would note that in allowing assumption of the agreement, I am ruling that Showtime has demonstrated no grounds on which to refuse to fulfill its obligations under the agreement." When asked to clarify what it had done with regard to the issues in the Adversary Proceeding, the court stated "I assumed that I disposed of all the elements with respect to the request for the relief, surviving elements with respect to the request for relief in the adversary proceeding." Then, in its order, the court held: "because full relief has been granted to Orion in the context of the Motion [to Assume], the Adversary Proceeding is hereby dismissed without prejudice as moot."

Showtime appealed the bankruptcy court's order to the district court (Martin, *J.*). On December 14, 1992, the district court upheld the bankruptcy court's order in its entirety. This appeal followed.

## DISCUSSION

### I. The Motion to Assume

■ After taking evidence on the issue, the bankruptcy court decided, in the context of deciding the Motion to Assume, that Orion had not violated the key-man clause. We hold that it was error for the bankruptcy court to decide a disputed factual issue between the parties to a contract in the context of determining whether the debtor or trustee should be permitted to assume that contract.

Under 11 U.S.C. § 365(a), "[a] trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease term of the debtor." Since 11 U.S.C. § 1107(a) gives debtors-in-possession the same rights and powers of a trustee, a debtor-in-possession, such as Orion, also may assume a contract with bankruptcy court approval. *See Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 n. 2 (2d Cir.1982); *In re Sundial Asphalt Co.*, 147 B.R. 72, 80 (E.D.N.Y.1992).

The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to "renounce title to and abandon burdensome property." 2 *Collier on Bankruptcy* ¶ 365.-01[1] (15th ed. 1993). If the trustee or debtor-in-possession rejects an executory contract pursuant to § 365, "the other party to the rejected contract becomes a general creditor of the estate for any damages flowing from the rejection." *In re Minges*, 602 F.2d 38, 41 (2d Cir.1979). In short, § 365 permits the trustee or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject.

■ The bankruptcy court erred because it misapprehended the fundamental nature and purpose of a motion to assume. At heart, a motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate. It is not the time

or place for prolonged discovery or a lengthy trial with disputed issues. ·*Cf. In re Docktor Pet Ctr., Inc.*, 144 B.R. 14, 16 (Bankr.D.Mass. 1992) ("[A] motion to assume an executory contract is generally, and should be, a summary proceeding. It is not the place for an extended breach of contract suit.").

■ In *In re Minges*, we held that a bankruptcy court reviewing a trustee's or debtor-in-possession's decision to assume or reject an executory contract should examine a contract and the surrounding circumstances and apply its best "business judgment" to determine if it would be beneficial or burdensome to the estate to assume it. 602 F.2d at 43. In reviewing a trustee's or debtor-in-possession's decision to assume an executory contract, then, a bankruptcy court sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession, and not, as it does in other circumstances, as the arbiter of disputes between creditors and the estate. Although several bankruptcy courts have read §· 365 as authorizing them to resolve questions involving the validity of contracts before deciding whether to permit the trustee or debtor-in-possession to assume the contracts, *see, e.g., In re L.T. Ruth Coal Co.*, 66 B.R. 753, 757–58 (Bankr. E.D.Ky.1986); *In ·re Nexus Communications, Inc.*, 55 B.R. 596, 598 (Bankr.E.D.N.C. 1985); *In re National Sugar Refining Co.*, 21 B.R. 196, 198 (Bankr.S.D.N.Y.1982), we believe that nothing in § 365 provides such authorization.

As we held in *Minges*, the process of deciding a motion to assume is one of the bankruptcy court placing itself in the position of the trustee or debtor-in-possession and determining whether assuming the contract would be a good business decision or a·bad one. Every business person would like to control the end result of her projections and judgments: a stock analyst who had the power to cause stocks to rise and fall to meet her projections would have an enviable track record. This is essentially what the bankruptcy court did here. Permitting a bankruptcy court to rule conclusively on a decisive issue of breach of contract would render the use of "business judgment" required by *In re Minges* unnecessary, and is incompatible with the limited purpose of motions to assume of ensuring that valuable property is preserved and burdensome property discarded.

■ Finally, it is important to keep in mind that the bankruptcy court's "business judgment" in deciding a motion to assume is just that—a judgment of the sort a businessman would make. In no way is this decision a formal ruling on the underlying disputed issues, and thus will receive no collateral estoppel effect. In a given case, a bankruptcy court might decide that it would be beneficial for the trustee or debtor-in-possession to assume a certain contract because the court thinks it unlikely that a court would hold that the debtor had breached the contract, and thus assuming the contract would be a good "business judgment." This "business judgment" could turn out to be wrong, however, if a later fact finder in an adversary proceeding decides that the underlying contract was in fact breached. In such a. case, the judge's wrong decision is simply an error of business judgment, not legal error.

■ Our· conclusion that the bankruptcy court erred in adjudicating the key-man issue in deciding the Motion to Assume is also informed by the fact that motions to assume always involve contracts, and allowing a bankruptcy court to decide a disputed *legal* contract· issue in the course of deciding a motion to assume could usurp litigants' Seventh Amendment jury-trial rights. Our holding that contract issues may not be decided as part of a motion to assume eliminates the possibility that any such constitutional problems will arise. We note that there is no prohibition on bankruptcy courts, for reasons of efficiency, hearing motions to assume and trying related adversary proceedings simultaneously. They merely must be treated as conceptually separate proceedings, which is to say that adversary proceeding issues are not to be decided as part of a motion to assume.

Because the bankruptcy court improperly decided the key-man issue in deciding the Motion to Assume, we vacate the bankruptcy court's holding on this ·issue. ·Since the

bankruptcy court might not have granted the Motion to Assume if it had known that it was not empowered to decide the key-man issue, we vacate the grant of the Motion to Assume and remand it to the bankruptcy court for further proceedings consistent with this opinion.

## II. District Court Denial of the Motion to Withdraw the Reference

### A. Reviewability

Before reviewing the district court's order denying the Motion to Withdraw, we must first decide whether it is appealable.

■ An order denying a motion to withdraw the reference of an adversary proceeding merges into a district court's final judgment disposing of it. *See In re Ben Cooper, Inc.,* 924 F.2d 36, 38 (2d Cir.) (*Ben Cooper II* ), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). Here the bankruptcy court stated that it was dismissing the adversary proceeding "without prejudice as moot." We must decide whether this was a final judgment.

We believe the bankruptcy court mislabeled what it was doing. The Adversary Proceeding was not moot, since no underlying facts had changed that would make a decision by the court an advisory opinion. Rather, the court simply rendered a decision in the Motion to Assume—that the key-man clause was not breached—that would have preclusive effect on the Adversary Proceeding, which by that time contained only the demand for declaratory judgment.

■ A district court has broad discretion to decide whether to render a declaratory judgment. *See In re Joint E. and S. Dist. Asbestos Litig.,* 993 F.2d 313, 314 (2d Cir. 1993); *Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1000 (2d Cir.1969), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970). Where a district court has before it a declaratory judgment action and a direct action containing all of the issues in the declaratory judgment action, and decides the common issues in the direct action, it may exercise its discretion to dismiss the declaratory judgment complaint. *Tyler Pharmacal Distribs., Inc. v. U.S. Dep't of Health, Educ., and Welfare,* 408 F.2d 95, 97 (7th Cir.1969); *see also* 10A Wright, Miller & Kane; *Federal Practice and Procedure* § 2759 (1983). We are convinced that this is what the bankruptcy court did here, regardless of its application of the "mootness" label in its order.

■ A discretionary dismissal of a declaratory judgment action is a final judgment reviewable on appeal. *See Broadview,* 417 F.2d at 1000. The district court's affirmance of the bankruptcy court's dismissal therefore was a final judgment, and we have jurisdiction to consider the district court's denial of the Motion to Withdraw since it is contained in that judgment.

### B. The Motion to Withdraw the Reference

The district court found that the Adversary Proceeding was a core proceeding, and, based on this determination, denied Showtime's Motion to Withdraw.

In *Northern Pipeline Construction. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court ruled that Congress could not constitutionally empower a non-Article III bankruptcy court with the authority to adjudicate a state breach-of-contract action, based on a pre-petition contract, brought by a debtor against a defendant that had not filed a claim with the bankruptcy court. The court held that "our Constitution reserves for Art. III courts" traditional functions of the judicial power such as adjudicating state breach-of-contract claims like that by the debtor against the defendant. *Id.* at 84, 102 S.Ct. 2858, 73 L.Ed.2d 598. Accordingly, the Court in *Marathon* found unconstitutional Congress's broad grant of jurisdiction to the bankruptcy courts to adjudicate such claims in the Bankruptcy Act of 1978.

In response to *Marathon,* Congress enacted 28 U.S.C. § 157. *See In re Ben Cooper, Inc.,* 896 F.2d 1394, 1398 (2d Cir.) (*Ben Cooper I* ), *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated on remand, Ben Cooper II, supra.* Section 157 classifies matters as either "core proceedings," which the bankruptcy court may "hear and determine" and on which the

court "may enter appropriate orders and judgments," § 157(b)(1), or "non-core proceedings," which the bankruptcy court may hear, but for which the bankruptcy court is only empowered to submit proposed findings of fact and conclusions of law to the district court for *de novo* review, § 157(c)(1).

Under 28 U.S.C. § 157(d), a "district court may withdraw ... any case or proceeding referred [to the bankruptcy court] on its own motion or on a timely motion of any party, for cause shown." Section 157(d) does not define the term "cause." District courts in this circuit have considered a number of factors in evaluating cause: whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law. *See, e.g., In re Kenai Corp.,* 136 B.R. 59, 61 (S.D.N.Y.1992) (factors include whether action is core or non-core and issues of "(1) judicial economy, (2) uniform bankruptcy administration, (3) reduction of forum shopping, (4) economical use of debtors' and creditors['] resources, (5) expediting the bankruptcy process, and (6) the presence of a jury demand"); *In re Century Brass Prods., Inc.,* No. 2:91–79, 1992 WL 22191, at *3, 1992 U.S. Dist. LEXIS 1277, at *8 (D.Conn. Jan. 7, 1992) (promotion of uniformity in bankruptcy administration, judicial economy, and the Bankruptcy Court's knowledge of the facts warranted denying motion to withdraw reference); *In re Mountain View Coach Line, Inc.,* No. 88 Civ. 5385, 1989 WL 129479, at *1, 1989 U.S. Dist. LEXIS 12698, at *2 (S.D.N.Y. Oct. 24, 1989) (court should consider whether matter is core or non-core and issues of judicial economy); *In re Wedtech Corp.,* 94 B.R. 293, 296 (S.D.N.Y.1988) (uniformity, forum shopping, efficiency, and jury trial considerations all are relevant); *see also Holland America Ins. Co. v. Roy,* 777 F.2d 992, 999 (5th Cir.1985) ("The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process."); 1 *Collier on Bankruptcy* ¶ 3.01[2][e], at 3–64.

■ A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn. For example, the fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court. Conversely, hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues. Thus once a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.

■ The threshold core/non-core evaluation also determines the relevance of parties' jury trial rights to deciding a motion to withdraw the reference. While we held in *Ben Cooper I* that a bankruptcy court has the power to hold jury trials in core proceedings, we noted in dicta that the Seventh Amendment's Reexamination Clause, which states that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law," likely would prohibit jury trials in bankruptcy courts in non-core proceedings due to the district court's *de novo* review of such proceedings. *See* 896 F.2d at 1403; *see also In re Kaiser Steel Corp.,* 911 F.2d 380, 391 (10th Cir.1990) (disagreeing with our holding in *Ben Cooper I* as to bankruptcy court jury trials of core matters, but agreeing with our dicta regarding the effect of the reexamination clause on non-core jury trials in bankruptcy court); *In re Cinematronics, Inc.,* 916 F.2d 1444, 1451 (9th Cir.1990); *Beard v. Braunstein,* 914 F.2d 434, 442–43 (3d Cir.1990). We now reach the issue reserved in *Ben Cooper I,* and hold that the constitution prohibits bankruptcy courts from holding jury trials in non-core matters.

■ If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference. However, a district

1102

court also might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.

 While the district court in the case at bar appropriately first focused its attention on whether the Adversary Proceeding was core or non-core, its erroneous conclusion that it was core infected the rest of its analysis.

The district court found the Adversary Proceeding to be core under the language in § 157(b)(2)(A) of the Bankruptcy Code stating that "matters concerning the administration of the estate" are core proceedings. 28 U.S.C. § 157(b)(2)(A). It relied on *In re Leco Enterprises, Inc.*, 125 B.R. 385 (S.D.N.Y.1991), which held that an action to collect on a disputed account receivable of $101,000.00 was a core proceeding. The *In re Leco* court reasoned that since the claim "if collected would inure to the benefit of the estate or the creditors of the estate[,] the prompt resolution of this Adversary Proceeding is essential to the administration of the estate and the adjustment of the debtor-creditor relationships since these funds are inextricably linked to the liquidation of the estate." *Id.* at 389–90. The district judge found that "[t]his reasoning applies with equal, if not greater, force in the instant case, which involves a potential debt of $77 million, not $101,000.00. Orion's recovery of a sum that large could do nothing but affect the administration and liquidation of the estate."

The problem with the *In re Leco* approach is that it creates an exception to *Marathon* that would swallow the rule. Any contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus "concern[s]" its "administration." Certainly this is true here where the outcome could determine Orion's continued viability as an enterprise. Nonetheless, the Adversary Proceeding remains a pre-petition contract action that the Supreme Court held in *Marathon* may not be finally adjudicated by a non-Article III judge. *See Beard*, 914 F.2d at 443 ("It is clear that to the extent that the claim is for pre-petition contract damages, it is non-core."); *Cinematronics*, 916 F.2d at

1450; *In re K–Rom Constr. Corp.*, 46 B.R. 745, 749–50 (S.D.N.Y.1985); *see also* 1 *Collier on Bankruptcy* ¶ 3.01[2][b][iii], at 3–49 (noting that defining pre-petition contract actions as core because the amounts allegedly due would inure to the benefit of the estate would "wipe out the underpinnings of *Marathon* ").

While it is clear that Congress intended § 157(b)–(2)(A)'s designation of matters relating to the administration of the estate as core to encompass a wide range of matters, there is no evidence of any Congressional intent to contravene the Supreme Court's holding in *Marathon. See Ben Cooper I*, 896 F.2d at 1398 ("the legislative history of [§ 157] indicates that Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits") (quoting *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir.1987)). Thus we hold that this breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core. Since the core/non-core determination was the pivotal issue in determining the Motion to Withdraw, we vacate the district court's denial of the motion and remand it for re-determination in light of the standards set forth in this opinion.

We also vacate the bankruptcy court's dismissal of the Adversary Proceeding, together with all orders of the bankruptcy court entered in the Adversary Proceeding after the district court's denial of the Motion to Withdraw. Because this includes the vacatur of the bankruptcy court's striking of Showtime's demand for a jury trial, we do not decide if the bankruptcy court erred in finding the Adversary Proceeding to be equitable. We leave it to the district court on remand to consider, as necessary to decide the Motion to Withdraw, whether Orion's claim for "specific performance" of Showtime's obligations under the contract is in effect just a garden-variety claim for contract damages, *see Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 49 n. 7, 109 S.Ct. 2782, 2792 n. 7, 106 L.Ed.2d 26 (1989) ("[A]ny distinction that might exist between 'damages' and monetary relief under a different label is purely semantic, with no relevance to the adjudication of [a] Seventh Amendment claim."), and wheth-

er the breach-of-contract action underlying the declaratory judgment claim is legal or equitable, *see Simler v. Conner,* 372 U.S. 221, 223, 83 S.Ct. 609, 611, 9 L.Ed.2d 691 (1963) (per curiam) ("The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action.").

## CONCLUSION

We vacate the bankruptcy court's grant of the Motion to Assume, including its determination of the key-man issue, and vacate the dismissal of the Adversary Proceeding. We remand the Motion to Assume to the bankruptcy court for further proceedings consistent with this opinion. We vacate the district court's denial of the Motion to Withdraw, and all orders of the bankruptcy court relating to the Adversary Proceeding after the Motion to Withdraw was decided. We remand the Adversary Proceeding and the Motion to Withdraw to the district court for further proceedings consistent with this opinion.