In re Petition of Anthony James McMA-HON and Roger Smith as Joint Provisional Liquidators of English & American Insurance Company Limited, Debtor in Foreign Proceedings.

Anthony James McMAHON and Roger Smith, as Scheme Administrators of English & American Insurance Company Limited, Plaintiffs,

v.

PROVIDENCE CAPITOL
ENTERPRISES, INC.,
Defendant.

No. 97 Civ. 8536(SAS).
Adversary No. 97/8796A (CB).

United States District Court,
S.D. New York.

Feb. 9, 1998.

---

1. This figure represents $8,135 in *arrears* under the third DPA plus $3,680 which was the *current* payment under the third DPA.

Gregory M. Petrick, Kenneth P. Coleman, Cadwalader, Wickersham & Taft, New York City, for plaintiffs.

David L. Katsky, Adrienne B. Koch, Judith M. Shampanier, Esanu Katsky Korins & Siger, L.L.P., New York City, for defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On November 5, 1997, Defendant Providence Capitol Enterprises ("PCE") filed a Motion to Withdraw Reference of the above adversary proceeding from the United States Bankruptcy Court for the Southern District of New York to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 157(d).

## I. Background

The Plaintiffs are Joint Provisional Liquidators of English & American Insurance Company Limited ("E & A"). This motion stems from a series of agreements involving E & A, the Defendant, PCE, and other insurance companies. The following facts are not in dispute.

On January 26, 1986, E & A commenced a Portfolio Reinsurance Agreement (the "Reinsurance Agreement") with Providence Capitol Life Assurance company ("PCLA"), whereby E & A reinsured PCLA for 100% of its liability for all classes of general business underwritten by PCLA between 1972 and 1976. Complaint Ex. B at 1. On the same day, E & A entered into a Retrocessional Reinsurance Agreement (the "Retrocessional Agreement") with Capitol Insurance Limited ("CIL"), whereby CIL reinsured E & A for part of the risk it assumed by reinsuring PCLA. Complaint Ex. C. Also on the same day, E & A, Providence Capitol Limited ("PCL"), and the Defendant, PCE, entered into the Guarantee in which PCL agreed to indemnify E & A against all "losses, damages, costs and expenses" incurred by E & A due to the failure of CIL, for any reason, to perform its obligations under the Retrocessional Reinsurance Agreement. Complaint Ex. D. Defendant PCE, in turn, agreed to assume PCL's obligations should "the presentation of a petition or an order being made or an effective resolution being passed for winding up" PCL occur. Complaint Ex. D. On December 17, 1986, PCL was wound up under Bermuda law. Complaint Ex. E. The Plaintiffs allege that this triggered the aforementioned clause under the Retrocessional Agreement and PCE became obligated to E & A to assume PCL's obligations. Complaint at 4. On February 2, 1987, PCE entered into two agreements (the "1987 Agreements") where CIL and London & Gloucester Limited ("L & G") agreed to indemnify PCE with respect to the Guarantee. Complaint Exs. F and G.

On January 31, 1995, the United States Bankruptcy Court for the Southern District of New York approved and put into effect a

scheme of arrangement for E & A (which Plaintiff analogizes to a plan of reorganization under Chapter 11 of the Bankruptcy Code) sanctioned by the High Court of Justice of England, Scotland and Wales in London, England. Complaint Ex. A. In letters to Plaintiff McMahon dated June 23, 1995 and October 17, 1995, the Defendant stated that the intent of the 1987 Agreements was to relieve it of any liability to E & A for any failure of CIL to carry out its obligations under the Reinsurance Agreement of 1986. Complaint Ex. H.

Viewing these letters as a repudiation and breach of the Retrocessional Agreement, Plaintiffs commenced the adversary proceeding in September, 1997, in the Bankruptcy Court, seeking a declaratory judgment that "(1) Providence [PCEI is obligated under the Guarantee to indemnify English & American for any losses, damages, costs, and expenses which English & American may incur by reason of CIL's failure to perform its obligations under the Retrocessional Reinsurance Agreement; and (2) that Providence's obligations to English & American under the Guarantee are not altered, amended or modified by the CIL Indemnity or the L & G Indemnity." Complaint at 6. Shortly after the Defendant answered the complaint, it submitted this motion to withdraw the reference.

## II. Discussion

### A. Core Versus Non-core Proceeding

In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court ruled that it would be unconstitutional for a non-Article III bankruptcy court to adjudicate a state breach-of-contract claim brought by a debtor against a defendant who had not filed a claim with the bankruptcy court, when the contract was executed prior to the filing of the bankruptcy petition.

In 1984, in response to the holding in *Marathon Pipe Line*, Congress passed 28 U.S.C. § 157, which states that bankruptcy judges may hear "cases arising under title 11 and all core proceedings." 28 U.S.C.

§ 157(b)(1). For non-core proceedings, however, the bankruptcy judge may hear them, but may only submit proposed findings of fact and conclusions of law to the district court for de novo review. 28 U.S.C. § 157(c)(1). Additionally, "the constitution prohibits bankruptcy courts from holding jury trials in non-core matters." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir.1993).

Section 157(d) of the Code allows a district court to "withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown . . ." While the Code does not define "cause," in *Orion Pictures* the Second Circuit listed the factors that courts should use to determine if "cause" exists, stating that the preliminary inquiry should focus on whether the adversary proceeding is core or non-core. 4 F.3d at 1101. Section 157(b)(2) provides a non-exhaustive list of core proceedings, including "matters concerning the administration of the estate," upon which the Plaintiffs primarily rely. Plaintiff's Memorandum of Law in Opposition to Motion to Withdraw Reference ("Pl.Mem.") at 6.

The Defendant argues that the Second Circuit's decision in *Orion Pictures* is controlling. Defendant's Reply Memorandum of Law in Support of Its Motion to Withdraw the Reference at 4–6. In 1986, the parties had entered into an output contract. On December 11, 1991, the plaintiff filed for reorganization under Chapter 11 of the U.S. Bankruptcy Code. On December 24, 1991, the defendant told the plaintiff that because it believed that the plaintiff was not honoring the terms of the contract it would not honor its obligations. In March of 1992, plaintiff filed a breach of contract claim in a bankruptcy court and the defendant moved to withdraw the reference. 4 F.3d at 1097. Thus, the plaintiff's cause of action occurred either when the defendant repudiated the contract, or when the defendant stopped performing his contractual obligations, both of which occurred after the plaintiff filed for bankruptcy reorganization. The court held that "this breach-of-contract action by a

debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core." *Id.* at 1102. To hold the claim to be core merely because it is a matter "concerning the administration of the estate," creates an exception "that would swallow the rule" as any contract claim would "concern" the administration of the estate. *Id.*

■ Plaintiffs attempt to distinguish *Orion* by asserting that *Orion* involved a pre-petition breach while the instant case involves a post-petition breach. Pl. Mem. at 10. However, contrary to the Plaintiffs' assertions, *Orion* involved the same type of dispute as that encountered here: a post-petition breach of a pre-petition contract. The plaintiff in *Orion,* like the Plaintiffs in the instant case, filed for bankruptcy and then, after the defendant repudiated, filed a breach-of-contract claim. There is no factual support for Plaintiff's assertions that the claim arose pre-petition.

Moreover, the Plaintiffs' argument that there is a crucial distinction between pre-petition breaches (non-core) and post-petition breaches (core) is not persuasive. The only post-*Orion* Second circuit decision Plaintiffs cite in support of their theory, *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.),* 68 F.3d 26 (2d Cir.1995), is factually distinguishable as that case involved priority rights of creditors who had filed claims against the estate. The court stated that resolving the order of those rights was "an integral and historic bankruptcy function," whereas in *Orion* the "only relationship the action had to the bankruptcy proceeding was that determination of the action would affect the ultimate size of the estate." *Id.* at 32. Other cases cited by Plaintiffs involve reasoning rejected by the *Orion* court, *see, e.g., General American Communications Corp. v. Landsell (In re General American Communications Corp.),* 130 B.R. 136 (S.D.N.Y.1991) (a post-petition claim is core because "it concerns the administration of the estate"), or decisions that misapprehend *Orion, see, e.g., Seatrain Lines, Inc. v. London Steamship Owners' Mutual Life Ins. Assoc. (In re Seatrain),* 198 B.R. 45 (S.D.N.Y.1996) (claiming

without support that Orion involved a pre-petition cause of action).

Thus, because the case law does not support the theory that the timing of the breach is relevant in cases involving pre-petition contracts where the defendant has not filed a claim with the bankruptcy court, the decisions in *Marathon Pipe Line* and *Orion* lead to the inescapable conclusion that the instant proceeding is non-core. *See also United States Lines, Inc. v. American Steamship Owners Mutual Protection and Indem. Ass'n. Inc. (In re United States Lines, Inc.),* 220 B.R. 5 (S.D.N.Y. Dec. 4, 1997)(under *Orion* a post-petition breach of a pre-petition contract is non-core); *Kentile Floors, Inc. v. Congoleum Corp. (In re Kentile Floors, Inc.),* 1995 WL 479512 (S.D.N.Y. Aug. 10, 1995) ("neither the Bankruptcy Code nor the case law supports the distinction Kentile [plaintiff] draws between pre- and post-petition causes of action" and holding that a post-petition breach of a pre-petition contract is non-core).

B. Other Factors

■ After concluding that a claim is non-core, the court must then consider efficiency, prevention of forum shopping, and uniformity in administering bankruptcy law. *Orion Pictures,* 4 F.3d at 1101–02. Because the cause of action is non-core, the bankruptcy court's findings would be subject to de novo review, see 28 U.S.C. § 157(c)(1), which could lead to duplication of effort. Also, a jury trial would not be available in the bankruptcy court. *See Orion Pictures,* 4 F.3d at 1101. Forum shopping would not be encouraged by granting the Defendant's motion as this case involves a non-core proceeding that could have and probably should have been brought in a district court originally. Finally, uniformity in the administration of bankruptcy law will not be effected as the breach of contract claim does not turn on questions of bankruptcy law. Thus, these additional factors favor granting Defendant's motion.

**III. Conclusion**

Because this post-petition breach of a pre-petition contract is a non-core proceeding, which would be better suited to trial in the

District Court, the motion to withdraw the reference to the bankruptcy court is granted. A pretrial conference is scheduled for February 27 at 4:30.

SO ORDERED.