**TULTEX CORPORATION, Plaintiff,**

v.

**FREEZE KIDS, L.L.C., Defendant.**

**No. 00 Civ. 1473 SAS.**

United States District Court,
S.D. New York.

June 30, 2000.

**34**

Allen S. Gage, Jones, Day, Reavis & Pogue, New York City, for Plaintiff.

Michele D'Avolio, Wachtel & Masyr, L.L.P., New York City, for Defendant.

## OPINION & ORDER

SCHEINDLIN, District Judge.

On May 27, 1999, plaintiff Tultex Corporation ("Tultex") filed a breach of contract action against defendant Freeze Kids, L.L.C. ("Freeze Kids") in New York State Supreme Court. Nine months later, on February 25, 2000, plaintiff removed its state court action to this Court. Plaintiff now seeks to transfer its action to the United States District Court for the Western District of Virginia. For the reasons that follow, plaintiff's motion to transfer venue is denied.

## I. Background

### A. Factual Background

Plaintiff Tultex is a Virginia corporation with its principal place of business in Martinsville, Virginia. Complaint ¶ 1.[1] Tultex manufacturers and distributes fleeced sportswear and screen-printed goods. *Id.* ¶ 3.

Defendant Freeze Kids is a New York company with its principal place of business in Manhattan. *Id.* ¶ 2. Freeze Kids is a children's apparel wholesaler. Certification of Joseph Esses, Manager of Freeze Kids, in Opposition to Motion to Transfer Venue ("Esses Cert.") ¶ 2.[2] The Company has never conducted business in Virginia. *Id.*

In 1996, Phil Leff, Tultex's New York sales representative, contacted Freeze Kids to discuss a potential sales transaction between the two companies. *Id.* ¶ 3. Following Leff's initial contact, representatives from both companies met in New Jersey to discuss and negotiate financing for the purchase of Tultex merchandise by Freeze Kids. *Id.* ¶ 4.

As a result of these discussions, Freeze Kids purchased, on credit, approximately $1.5 million of fleeced sportswear and screen-printed goods from Tultex. Complaint ¶ 5; Memorandum of Law of Tultex in Support of its Motion to Transfer Venue ("Pl.Mem.") at 8. Freeze Kids purchased the merchandise by placing orders with Tultex's New York representatives. Esses Cert. ¶ 5. Freeze Kids did not place any orders with Tultex's representatives in Virginia. *Id.* ¶ 7. Nor did representatives of Freeze Kids ever travel to Tultex's offices in Virginia for any purpose. *Id.*

The Tultex merchandise was delivered to Freeze Kids's warehouse in New Jersey. *Id.* ¶ 6. After receiving the merchan-

---

**1.** "Complaint" refers to the Complaint filed in the New York State Supreme Court on May 27, 1999. A copy of the Complaint is attached as Exhibit A to the Certification of Defendant's Counsel Michele D'Avolio in Opposition to Motion to Transfer Venue ("D'Avolio Cert.").

**2.** Plaintiff does not dispute the factual statements set forth in the Esses Certification—with two exceptions. *First,* plaintiff claims that the Esses Certification "contains various legal conclusions" and argues that such legal conclusions "are wholly inappropriate" and should be disregarded. *See* Reply of Tultex Corporation to Freeze Kids, LLC's Opposition to Tultex Corporation's Motion to Transfer Venue ("Pl.Reply") at 1 n. 1. *Second,* plaintiff objects to Esses's assertion that "most of Tultex's witnesses are located in New York", arguing that Esses has no knowledge of the geographical location of Tultex's witnesses. *See id.* (quoting Esses Cert. ¶ 9).

In light of plaintiff's valid objections, I have disregarded any legal conclusion in the Esses Certification as well as Esses's statement concerning the location of Tultex's witnesses.

dise, Freeze Kids notified Tultex's New York representatives that the merchandise was defective. *Id.* ¶ 8. Tultex's New York representatives contacted Tultex's Virginia office, and the Virginia office sent quality control representatives to New York to address Freeze Kids's complaints. *Id.* The Virginia representatives traveled to Freeze Kids's New Jersey warehouse to inspect the allegedly defective merchandise. *Id.* Subsequent to the on-site inspection, Tultex's Virginia representatives and Freeze Kids exchanged facsimiles regarding the disputed merchandise. *Id.*

At some point prior to the commencement of this litigation, Freeze Kids tendered a payment of approximately $500,000 to Tultex. Pl. Mem. at 8. Freeze Kids sent the payment directly to Tultex's credit manager in Virginia. *Id.* However, Tultex claims that Freeze Kids still owes $934,055.46 on its purchase of Tultex merchandise. Esses Cert. ¶ 11; Complaint ¶ 5.

### B. Procedural Background

On May 27, 1999, Tultex filed an action against Freeze Kids in New York State Supreme Court alleging breach of contract and unjust enrichment. Complaint, Ex. A to D'Avolio Cert. By its action, Tultex seeks repayment of the $934,055.46 allegedly due and owing from Freeze Kids. *Id.* On July 6, 1999, Freeze Kids answered the Complaint and asserted counterclaims. Answer with Counterclaims, Ex. B to D'Avolio Cert. The counterclaims charge Tultex with breach of contract for delivering defective merchandise. *Id.*

On December 3, 1999, Tultex (together with nine subsidiaries and affiliates) filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Virginia. Motion of

Tultex Corporation to Transfer Venue ("Pl. Tr. Mot.") at 2. Three months later, on February 25, 2000, Tultex removed its state court action to this Court pursuant to 28 U.S.C. § 1452 which provides that "[a] party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a); *see also* Tultex Notice of Removal of State Court Civil Action ("Removal Notice"), Ex. D to D'Avolio Cert. Under 28 U.S.C. § 1334, district courts possess "original but not exclusive jurisdiction of all civil proceedings under title 11 or arising in related cases under title 11." Tultex also invoked this Court's diversity jurisdiction, *see* 28 U.S.C. § 1332, as an alternative ground for removal. Removal Notice, Ex. D to D'Avolio Cert., ¶ 6.

On April 17, 2000, plaintiff filed the instant motion to transfer this action to the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. §§ 1334, 1404 and 1412.[3]

## II. Discussion

### A. Transfer of Venue Pursuant to 28 U.S.C. § 1412

Plaintiff first seeks to transfer venue pursuant to 28 U.S.C. § 1412 which states: "A district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." However, as the plain language of the statute suggests, § 1412 applies only to "core" bankruptcy proceedings. *See Gulf States Exploration Corp. v. Manville Forest Prods. Corp. (In re Manville)*, 896 F.2d 1384, 1388 (2d Cir.1990). Accordingly, transfer under this statute is

---

**3.** Pursuant to a standing order of the United States District Court for the Western District of Virginia, all cases arising under Chapter 11 are automatically assigned to the United States Bankruptcy Court for the Western District of Virginia. *See* Pl. Tr. Mot. at 1 n. 1.

Accordingly, if plaintiff were to prevail on its motion to transfer venue, its action would automatically be referred to the federal bankruptcy court in the Western District of Virginia. *See id.*

appropriate only if Tultex's breach of contract action constitutes a core proceeding.

A nonexclusive list of actions which constitute core bankruptcy proceedings is set forth in 28 U.S.C. § 157(b)(2). Tultex argues that its contract action falls within three of the listed categories: (i) "matters concerning the administration of the [bankruptcy] estate", § 157(b)(2)(A); (ii) "allowance or disallowance of claims against the [bankruptcy] estate", § 157(b)(2)(B); and (iii) "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship", § 157(b)(2)(O). Tultex's allegations of "core proceeding" are discussed in turn below.[4]

### 1. 28 U.S.C. § 157(b)(2)(A): Matters concerning the administration of the estate

As set forth above, § 157(b)(2)(A) identifies "matters concerning the administration of the estate" as core proceedings. According to Tultex, collection of the $934,055.46 it claims is due and owing from Freeze Kids will impact its reorganization under Chapter 11. Thus, Tultex contends, its breach of contract action is a "matter[ ] concerning the administration of the estate." Before addressing Tultex's specific argument, I briefly review *Northern Pipeline Construction, Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the seminal case discussing jurisdictional limits on the power of the federal bankruptcy courts.

In *Marathon,* a Chapter 11 debtor filed a breach of contract action in the bankruptcy court against the defendant, Marathon Pipeline, pursuant to the Bankruptcy Act of 1978, 28 U.S.C. § 1471. *See id.* at 56, 102 S.Ct. 2858. The 1978 Act granted federal bankruptcy courts jurisdiction over "all 'civil proceedings arising under title 11 ... or arising in or related to cases under title 11.'" *Id.* at 54, 102 S.Ct. 2858 (quoting 28 U.S.C. § 1471). Marathon Pipeline had not filed a proof of claim in connection with the debtor's bankruptcy; nor did it have any other connection to the bankruptcy proceedings. *See id.* at 56, 102 S.Ct. 2858. Accordingly, Marathon moved to dismiss the debtor's contract action arguing that the 1978 Act unconstitutionally conferred Article III judicial power upon non-Article III bankruptcy judges. *See id.*

The bankruptcy court denied Marathon's motion but, on appeal, the district court reversed finding the 1978 Act unconstitutional. *See id.* at 57, 102 S.Ct. 2858. The Supreme Court affirmed the district court, holding that state-created private rights such as contract claims must be adjudicated by an Article III judge. *See id.* at 69–70, 102 S.Ct. 2858.[5] Thus, following *Marathon,* it is well-settled that Article III prohibits bankruptcy courts from adjudicating pre-petition contract claims— that is, claims arising prior to the commencement of the debtor's bankruptcy[6]—

---

4. Noncore proceedings are those "related to" cases pending under Title 11. The language of § 1412 contains no reference to "related proceedings"; it speaks only of proceedings arising "under" Title 11. Indeed, § 1412 replaces 28 U.S.C. § 1475, which was repealed by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Section 1475 used the phrase "related to such a case"— § 1412 does not. *See Goldberg Holding Corp. v. NEP Productions, Inc.*, 93 B.R. 33, 34 (S.D.N.Y. 1988). The absence of this "related to" language has been viewed "as evidence of Congress's intention that motions to transfer actions that are related to title 11 cases should be controlled by § 1404, the general change of venue provision, rather than § 1412." *Id.*

Section 1412 reflects Congress's desire "to narrow the scope of the bankruptcy courts' jurisdiction by treating civil actions that are related to cases under title 11 differently from cases or proceedings arising under title 11." *Id.*

5. The Supreme Court also struck down the 1978 Act as unconstitutional. *See id.* at 87, 102 S.Ct. 2858.

6. In the instant case, Tultex's contract action is "pre-petition" both because it arose prior to Tultex's filing for Chapter 11 relief and because it was commenced prior to Tultex's filing for Chapter 11 relief. In *Marathon,* the

against a nonparty to the bankruptcy. *See, e.g., S.G. Phillips Constructors, Inc. v. City of Burlington,* 45 F.3d 702, 705 (2d Cir.1995).

Tultex effectively argues that the clear rule of *Marathon* does not apply here because Tultex's contract claim is a "matter[ ] concerning the administration of [its] estate." That is, even though Tultex's contract claim against Freeze Kids arose and was commenced prior to its Chapter 11 filing, that claim may be decided by a bankruptcy judge rather than an Article III judge because it involves the "prompt collection of [accounts receivable]". Pl. Mem. at 3 (quoting *Franklin Computer Corp. v. Harry Strauss & Sons, Inc.,* 50 B.R. 620, 625 (Bankr.E.D.Pa.1985)).

Tultex's reasoning is flawed, however, because "it creates an exception to *Marathon* that would swallow the rule." *Orion Pictures Corp. v. Showtime Networks, Inc.,* 4 F.3d 1095, 1102 (2d Cir.1993). "Any contract that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus 'concerns' its 'administration.'" *Id.* To follow Tultex's argument to its logical conclusion, all pre-petition contract actions would constitute matters concerning the administration of the bankruptcy estate and, as a result, all pre-petition contract claims could be resolved by bankruptcy judges under § 157(b)(2)(A). This result is a clear violation of the rules set forth in *Marathon* and *Orion.* Accordingly, and consistent with those decisions, Tultex's contract claim is not a core proceeding under § 157(b)(2)(A).[7]

### 2. 28 U.S.C. § 157(b)(2)(B): The allowance or disallowance of claims against the estate

Tultex also relies on § 157(b)(2)(B) which provides that core proceedings in-

clude the "allowance or disallowance of claims against the estate." Plaintiff contends that defendant's counterclaims in the breach of contract action are claims against the bankruptcy estate.

In support of its argument, plaintiff fails to cite—nor could it—any cases demonstrating that a pre-petition breach of contract claim is a core proceeding. Rather, it argues that if defendant prevails on its claims against Tultex, it would have to file a proof of claim in the bankruptcy court in order to monetize the award.

As set forth *supra* Part II.A.1., a pre-petition breach of contract claim is not a core proceeding. Article III of the Constitution prohibits "the bankruptcy court from adjudicating a pre-petition claim by the debtor in an adversary proceeding against a non-party to the bankruptcy." *S.G. Phillips Constructors, Inc.,* 45 F.3d at 705 (discussing *Marathon,* 458 U.S. at 60, 102 S.Ct. 2858). It is only by filing a proof of claim against a bankruptcy estate that "the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting [it] to the bankruptcy court's equitable power." *Id.; see also McMahon v. Providence Capitol Enterprises, Inc.,* 222 B.R. 205, 208 (S.D.N.Y.1998) ("Where defendant has not yet filed a claim with the bankruptcy court, the decisions in *Marathon Pipe Line* and *Orion* lead to the inescapable conclusion that [a debtor's pre-petition contract action] is non-core.").

In *Bevilacqua v. Bevilacqua,* 208 B.R. 11, 15 (E.D.N.Y.1997), the court stated that "were plaintiff to be awarded damages in its suit and then file a proof of claim in bankruptcy court to recover such damages, that proceeding would be core pursuant to § 157(b)(2)(B) . . . ." However, defendant has not yet filed a proof of

---

debtor commenced its contract action subsequent to filing for relief under Chapter 11. *See Marathon,* 458 U.S. at 56, 102 S.Ct. 2858.

**7.** In addition, Tultex's reliance on *Franklin*—the only case it cites in support of its claim

under § 157(b)(2)(A)—is misplaced. *See* Pl. Mem. at 3. *Franklin* is an Eastern District of Pennsylvania case that is inconsistent with the law of our Circuit. *See Orion,* 4 F.3d at 1102.

claim. When and if Freeze Kids files a proof of claim, that claim will constitute a core bankruptcy proceeding. But the fact that at some later time defendant may file a proof of claim in order to collect on a judgment is not a sufficient basis upon which to transfer the underlying suit.

### 3. 28 U.S.C. § 157(b)(2)(O): Proceedings affecting the liquidation of the estate

Core proceedings also include those "affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor ... relationship." 28 U.S.C. § 157(b)(2)(O). Plaintiff argues that resolution of the pending claims and counterclaims "will have a material effect on Tultex's ability to reorganize under [C]hapter 11." Pl. Mem. at 4.

Although plaintiff's breach of contract action can arguably be viewed as a proceeding that affects the liquidation of the assets of the Tultex bankruptcy estate, if this action were regarded as core, then "virtually any action by a debtor that would result in a recovery for the estate would be a core proceeding." *Interconnect Tel. Servs., Inc. v. Farren*, 59 B.R. 397, 400 (S.D.N.Y.1986). Again, this would create an exception to *Marathon* that "would swallow the rule." *Orion*, 4 F.3d at 1102.[8]

### B. Transfer of Venue Pursuant to 28 U.S.C. § 1404

■ Tultex alternatively argues that the Court should transfer venue pursuant to 28 U.S.C. § 1404, the general change of venue provision. This statute states that "a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

■ Under 28 U.S.C. § 1391, a diversity action[9] may only be brought in the district where (1) the defendant resides; (2) a substantial part of the events occurred; or (3) the defendant is subject to personal jurisdiction. Because the defendant is a New York corporation and a "substantial part of the events" occurred in New York and New Jersey but not in Virginia, Tultex's contract action could only have been brought in the Western District of Virginia if Freeze Kids is subject to personal jurisdiction in that state.

■ Tultex contends that Freeze Kids is subject to personal jurisdiction in the Western District of Virginia pursuant to Virginia's long-arm statute. To determine whether a defendant is subject to personal jurisdiction under a state's long-arm statute, a two-step inquiry is applied: (i) "[w]hether statutory language, as a matter of construction, purports to assert personal jurisdiction over defendant[; and (ii) if so,] whether statutory assertion of personal jurisdiction is consonant with due process." *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982). The plaintiff has "the burden of proving that the Court has in personam jurisdiction over the defendant." *United Coal Co. v. Land Use Corp.*, 575 F.Supp. 1148, 1153 (W.D.Va.1983) (internal quotations omitted).

■ The Virginia long-arm statute provides, in pertinent part, that "a court may exercise personal jurisdiction over a per-

---

8. Finally, Tultex argues that the broad introductory language to § 157(b)(2)—"core proceedings include, but are not limited to ..."—creates a general catch-all provision pursuant to which this Court should find its contract action a core proceeding. *See* Pl. Mem. at 4.

   Although this argument is creative, it is also unavailing. Tultex cannot escape the plain fact that our Court of Appeals has held that "a breach of contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core." *Orion*, 4 F.3d at 1102. Therefore, this action is not a core proceeding pursuant to the introductory language of 28 U.S.C. § 157(b)(2).

9. Absent a basis in federal bankruptcy law, diversity is the only basis for federal jurisdiction in this contract dispute.

son, who acts directly or by an agent, as to a cause of action arising from the person's ... transacting any business in this Commonwealth." Va.Code Ann. § 8.01–328.1(A). The purpose of the statute is "to extend jurisdiction to the extent permissible under the due process clause." *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir.1990). Therefore, "a single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon [Virginia] courts." *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 535, 238 S.E.2d 800 (1977).

Freeze Kids's contacts with Virginia are insufficient to subject it to personal jurisdiction in that state. As discussed *supra* Part I.A., it was Tultex's New York representatives—not the company's Virginia representatives—who initially contacted Freeze Kids. Similarly, representatives from the two companies met in New Jersey—not in Virginia—to discuss and negotiate the sales contract that is the subject of Tultex's breach of contract action. Moreover, Freeze Kids placed its purchase orders with Tultex's New York representatives directly; it did not order goods from Tultex Virginia. Finally, Tultex merchandise was delivered to New Jersey, and, when Freeze Kids claimed the merchandise was defective, Tultex sent representatives to New Jersey to conduct an inspection.

In *Superfos Investments Ltd. v. First-Miss Fertilizer, Inc.*, 774 F.Supp. 393, 398 (E.D.Va.1991), plaintiff commenced a breach of contract action against a Mississippi corporation in Virginia. The Mississippi corporation moved to dismiss for lack of personal jurisdiction because (i) it was not qualified to do business in Virginia; (ii) plaintiff initiated contract negotiations in West Virginia; and (iii) the contract was formed in Mississippi. *See id.* at 393. In opposition, Superfos argued that correspondence, telephone calls and facsimile transmissions made by the defendant to Superfos in Virginia were enough to satisfy the requirements for personal jurisdiction under the Virginia long-arm statute. The court disagreed, concluding that "a contract which is accepted and becomes effective in another forum generally will not satisfy minimum contacts." *Id.* at 398; *see also United Coal Co.*, 575 F.Supp. at 1154 (holding that "mere contract negotiations carried out in Virginia between a state citizen and a nonresident, with execution and performance of the contract in a foreign forum[,] is not a sufficient transaction of business to assert jurisdiction over the defendant").

Tultex alleges that Freeze Kids's contacts with Virginia were sufficient to confer jurisdiction because (i) representatives of Freeze Kids had numerous telephone conversations with Tultex's representatives;[10] (ii) Tultex received payment in Virginia from Freeze Kids; (iii) Tultex's Virginia management approved requests from the company's New York merchandising and sales department;[11] and (iv) Tultex's representatives in Virginia exchanged correspondence with Freeze Kids's representatives in New York regarding the defective merchandise.

None of these allegations support the exercise of personal jurisdiction. To begin, "[i]t is generally held that mere phone calls and letters, and arguably fax commu-

---

**10.** It is unclear from Tultex's submissions whether Freeze Kids's representatives had numerous phone conversations with Tultex representatives in Virginia or elsewhere. *See* Pl. Mem. at 8.

**11.** Again, it is unclear from Tultex's submissions whether the "merchandising and sales departments" to which it refers are located in New York, Virginia or elsewhere. However, in light of the fact that Freeze Kids undisputedly placed its purchase orders in New York, it is reasonable to assume that Virginia management approved requests from its New York merchandising and sales departments with respect to Freeze Kids. In any event, interactions among Tultex's different offices have no effect on Freeze Kids's contacts with Virginia.

nications, in furtherance of a transaction are insufficient to form a basis for personal jurisdiction." *Superfos Inv., Ltd.*, 774 F.Supp. at 397–98; *see also Unidyne Corp. v. Aerolineas Argentinas,* 590 F.Supp. 391, 396 (E.D.Va.1984) ("Mere telephone conversations, telex messages and letters negotiating a transaction are insufficient to form a basis for in personam jurisdiction.").

The cases relied upon by Tultex do not require a different result. In *Peanut Corp.,* a case cited by Tultex in its moving and reply papers, the court noted that defendant Hollywood Brands regularly solicited business in Virginia, using brokers to sell its products. *See Peanut Corp.,* 696 F.2d at 314. Hollywood Brands also advertised in Virginia. *See id.* Here, Freeze Kids neither solicited business nor advertised in Virginia. Similarly, in *I.T. Sales v. Dry,* 222 Va. 6, 9, 278 S.E.2d 789 (1981), an employment contract entered into in Virginia was deemed sufficient to subject the employer to personal jurisdiction in that state. In contrast, the contract at issue here was entered into in New York and New Jersey—not Virginia. *See also Nan Ya Plastics Corp. U.S.A. v. DeSantis,* 237 Va. 255, 260, 377 S.E.2d 388 (1989) (cited extensively by plaintiff and finding that jurisdiction was proper where the disputed contract was formed in Virginia, and because "Nan Ya aggressively reached into Virginia and recruited a Virginia resident").

■ Moreover, even though Virginia is a so-called "single act" jurisdiction, the quality and nature of the single act must still be evaluated. In other words, although a single act "may" be enough to subject a party to personal jurisdiction in Virginia, *see* Va.Code Ann. § 8.01–328.1(a), a single act in Virginia does not automatically confer personal jurisdiction.

For example, plaintiff relies on *Frontline Test Equip., Inc. v. Greenleaf Software, Inc.,* 10 F.Supp.2d 583 (W.D.Va. 1998). However, *Frontline* states that "even a single act, because of its *quality and nature, may be sufficient* to support specific in personam jurisdiction...." *Id.* at 588 (emphasis added). Here, the quality and nature of Freeze Kids's acts— namely, mailing a payment to Virginia and exchanging some telephone calls and facsimiles with Tultex representatives in Virginia—do not satisfy Virginia's long-arm requirements. Accordingly, Tultex's action could not have been brought in Virginia, and therefore plaintiff's motion to transfer venue pursuant to 28 U.S.C. § 1404 is denied.[12]

## C. Transfer of Venue Pursuant to 28 U.S.C. § 1334(e)

■ Finally, plaintiff seeks to transfer venue pursuant to 28 U.S.C. § 1334(e) which provides that "[t]he district court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." Plaintiff claims that its breach of contract action constitutes "property of the estate," and therefore this Court should transfer venue to the United States Bankruptcy Court for the Western District of Virginia where its Chapter 11 petition is pending.[13] However, plaintiff fails to note that § 1334(e) provides no mechanism to pull Freeze Kids into Virginia absent a basis for personal jurisdiction; rather, § 1334(e) allows a bankruptcy court to assert in rem jurisdiction over the property of the bankruptcy estate wherever that property may be located. *See Hong Kong & Shanghai Banking Corp., Ltd. v. Simon,* 153 F.3d 991, 996 (9th Cir.1998).

---

**12.** Because defendant does not fall within the reach of Virginia's long-arm statute, it is unnecessary to address the constitutional requirements for personal jurisdiction.

**13.** Technically, plaintiff seeks transfer to the United States District Court for the Western District of Virginia. However, as discussed *supra* note 3, Tultex is effectively seeking transfer to the bankruptcy court.

Under the circumstances presented here, Tultex's breach of contract claim cannot be considered "property" of the estate for purposes of § 1334(e) unless and until Tultex wins a judgment against Freeze Kids. Any other finding would violate due process because it would allow Tultex to hale Freeze Kids into Virginia Court without any basis for personal jurisdiction over Freeze Kids. *See World–Wide Volkswagen Corp.*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (due process requires that before a defendant can be brought into a foreign jurisdiction, he "must be subject to the personal jurisdiction of the court"). Freeze Kids is not subject to in personam jurisdiction in Virginia under either 28 U.S.C. §§ 1412 or 1404. Accordingly, plaintiff's request to transfer venue pursuant to § 1334(e) is denied.

### III. Conclusion

Plaintiff's motion to transfer venue is denied. A conference is scheduled for July 13, 2000 at 4:30 p.m.