**In re LAWRENCE GROUP, INC., Debtor,**

**Lawrence Group, Inc. and the Lawrence Group Savings and Security Plan, Plaintiffs,**

v.

**Hartford Casualty Insurance Company, Defendant.**

**Bankruptcy No. 97–11294.**
**Civ. No. 1:02–CV–725.**

United States District Court, N.D. New York.

Nov. 15, 2002.

Eggleston & Cramer, Ltd. (Shireen T. Hart, Esq., of counsel), Burlington VT, for Plaintiffs.

Lambert & Weiss (Arthur N. Lambert, Esq., Alan M. Goldberg, Esq., of counsel), New York City, for Defendant.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiffs Lawrence Group, Inc. ("LGI") and the Lawrence Group Savings and Security Plan ("LGSSP") commenced the instant adversary proceeding in bankruptcy court against defendant Hartford Insurance Company ("Hartford") alleging causes of action for breach of contract and breach of the covenant of good faith and fair dealing arising out of an insurance policy issued by Hartford. Hartford now moves pursuant to 28 U.S.C. § 157(d) and Fed. R. Bankr.P. 5011(a) for an order withdrawing the reference of this matter to the bankruptcy court. LGI and LGSSP oppose. Oral argument was heard on September 27, 2002, in Albany, New York. Decision was reserved.

## II. FACTS

In February 1988, Hartford issued an insurance policy (the "policy") to LGI insuring against loss occasioned by employee dishonesty. (See Goldberg Aff., Ex. A, ¶¶ 10–11.[1]) In 1993, the policy was amended to add LGSSP as a named insured. (See id. at ¶ 12.) The policy was regularly renewed through March 1998. (See id. at ¶ 13.) It is alleged that Albert Lawrence misdirected and diverted certain funds and employee contributions in 1996 and 1997. (See id. at ¶ 18.) As a result of Albert Lawrence's alleged activities, LGI failed to make certain payments to the Internal Revenue Service, the New York State Department of Taxation and Finance, and the New York State Department of Labor (collectively referred to as the "Taxing Authorities"). (See id. at ¶ 22–23.) In February 1997, LGI voluntarily petitioned for bankruptcy protection. (See id. at ¶ 25.) LGI alleges that it did not discover Albert Lawrence's alleged improprieties until after a bankruptcy trustee was appointed in March 1999. (See id. at ¶¶ 25, 28.) On August 5, 1999, LGI filed a notice of claim with Hartford to recover the losses allegedly caused by Albert Lawrence's conduct. (See id. at ¶ 29.) By letter dated October 13, 1999, Hartford denied the claim. (See id. at ¶¶ 35–36, 38.) This action followed.

## III. DISCUSSION

▉ The withdrawal of a reference to the bankruptcy court is governed by 28 U.S.C. § 157(d). That section provides, in part, that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Factors to consider in making the determination of whether to withdraw a reference include whether the matter is core or non-core,

---

**1.** This exhibit is the Complaint plaintiffs filed against Hartford in the bankruptcy court.

whether the proceeding is legal or equitable, judicial economy, uniform bankruptcy administration, considerations of efficiency, prevention of forum shopping, and other related factors. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993), *cert. dismissed*, 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994). "A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *Id.*

### A. *Whether the Instant Matter is Core*

■ "[W]hether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir.1999). "The latter inquiry hinges on 'the nature of the proceedings.'" *Id.* (quoting *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 707 (2d Cir.1995)). "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings ..., or (2) the proceedings directly affect a core bankruptcy function." *Id.* (internal citations omitted).

■ The first inquiry is easily resolved. It is undisputed that the insurance contracts at issue are antecedent to the bankruptcy petition. "The fact that the [contract] was executed pre-petition and that the dispute ... could arise outside of bankruptcy proceedings weighs against its core status." *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir.2002). The parties dispute, however, the extent to which the contractual dispute is independent of the bankruptcy proceedings.

Plaintiffs argue that "[a] post-petition breach of contract creates a cause of action that is an asset of the bankruptcy estate distinct from the contractual rights arising from the pre-petition contract in that the breach is not antecedent to the reorganization plan." (Pl. Mem. of Law at 5.) Plaintiffs further contend that the contractual claim is inextricably intertwined with the bankruptcy proceedings because "the resolution of this matter directly affects the core bankruptcy function of equitably distributing the estate's assets." (*See* Pl. Mem. of Law at 6–7.) Plaintiffs maintain that because of Hartford's refusal to honor the claim, the debtor "has had to pay the Taxing Authorities from the bankruptcy funds which would have gone to other creditors of the Bankruptcy Estate." (*Id.* at 8.) Hartford argues that because this is a pre-petition, first-party insurance contract, the instant matter is unrelated to the bankruptcy proceedings. Hartford insists that any recovery under the insurance policy would merely augment the general bankruptcy estate, and therefore, does not have a sufficient nexus to the administration of the bankruptcy estate to render this matter "core."

■ Contrary to plaintiffs' contention, the critical question in determining whether a contractual dispute is core by virtue of timing is not whether the *cause of action* accrued post-petition, but whether the *contract* was formed post-petition.... A dispute arising from a pre-petition contract will usually not be rendered core simply because the cause of action could only arise post-petition. *In re U.S. Lines*, 197 F.3d at 637–38. Thus, as noted, the timing of the contract (pre-petition) weighs against a finding that this matter is core. There are insufficient other facts to tip the scales in favor of finding this dispute to be core. As plaintiffs argue, "[a]ny contract action that the

debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus concerns its administration." *In re Orion,* 4 F.3d at 1102 (internal quotations and alterations omitted). Finding any such contract action to sufficiently relate to the administration of the bankruptcy estate as to render the action core "would swallow the rule" in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that "a pre-petition contract action . . . may not be finally adjudicated by a non-Article III judge." *In re Orion,* 4 F.3d at 1102. "[W]here insurance proceeds would only augment the assets of the estate for general distribution, the effect on the administration of the estate [is] insufficient to render the proceedings core." *In re U.S. Lines, Inc.,* 197 F.3d at 638. "While the debtors' rights under its insurance policies are property of a debtor's estate, the contract claims are not rendered core simply because they involve property of the estate." *Id.* at 637 (internal quotations and citations omitted). "The issue is the *scope* of the insurance policies." *Id.* (quoting *In re United States Brass Corp.,* 110 F.3d 1261, 1268 (7th Cir. 1997)). Here, the cause of action under the Hartford policy accrued pre-petition and a proceeding to determine the parties' rights under the policy is entirely independent of the bankruptcy proceedings. As Hartford argues, the instant matter involves ordinary state-law claims on a first-party insurance contract and does not otherwise implicate the debtor's rights under the bankruptcy code. *In re United States Brass Corp.,* 110 F.3d at 1268 ("Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code

itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law."). Any recovery under the Hartford policy would serve only to augment the assets of the estate for general distribution. Unlike *In re U.S. Lines, Inc.* and other similar cases, the resolution of this contractual dispute will have little to no bearing on the administration of the estate. The scope of the insurance policies is to indemnify the insureds for covered losses occasioned by employee misconduct. The claims by any third parties such as the Taxing Authorities are not within the coverage of the Hartford policy, regardless of whether there is some connection between the employee misconduct and the Taxing Authorities' claims. There is nothing in the record or elsewhere indicating how or why plaintiffs' contract claims will directly affect the bankruptcy court's core administrative function. The only relationship this action has to the bankruptcy proceedings is that "determination of the action would affect the ultimate size of the estate." *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.),* 68 F.3d 26 (2d Cir.1995). Accordingly, this is a non-core matter.

## B. Whether the Other Factors Weigh in Favor of Withdrawing the Reference

■■■ Finding the instant matter to be non-core weighs in favor of withdrawing the reference. The other factors similarly support withdrawing the reference. Although the bankruptcy court has some familiarity with this case, taking into consideration Hartford's potential rights to a jury trial,[2] judicial

**2.** Bankruptcy courts are constitutionally prohibited from holding jury trials in non-core matters. *In re Orion Pictures Corp.,* 4 F.3d at

1101. Although it appears that Hartford did not file a jury demand, it is unclear whether it was obligated to do so where it consistently

economy,[3] delay,[4] uniformity of bankruptcy administration,[5] and the prevention of forum shopping,[6] this reference should be withdrawn. *See In re McMahon,* 222 B.R. 205, 208 (S.D.N.Y.1998).

## IV. *CONCLUSION*

Plaintiffs' claims against Hartford for breach of the insurance contract and breach of the covenant of good faith and fair dealing are non-core matters. Taking into all relevant considerations, under the facts and circumstances of this case the bankruptcy court reference should be withdrawn.

Accordingly, it is

ORDERED that

1. Defendant's motion is GRANTED;

2. The reference to the bankruptcy court is withdrawn; and

3. The case shall proceed in the normal manner on the district court calendar.

IT IS SO ORDERED.

---

objected to the jurisdiction of the bankruptcy court and reserved its right to withdraw the reference to the bankruptcy court.

3. Even if Hartford waived its right to a jury trial, in non-core matters, bankruptcy courts are only empowered to render findings of fact and conclusions of law that are reviewed *de novo* by the district court. This creates a two-step process that, if resolved in the district court in the first instance, can be reduced to a one-step process. *See In re Orion Pictures Corp.,* 4 F.3d at 1101 ("[T]he fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court.").

4. If the bankruptcy court hears the non-core issue in the first instance, thereby invoking the two-step process discussed *supra* in n. 3, this will delay the resolution of the contractual dispute and, consequently, the final administration of the bankruptcy estate.

5. Because the instant dispute among the parties is non-core, it should have little impact on the uniformity of bankruptcy administration.

6. At the time Hartford issued the policy, it had no reason to believe that any disputes arising out of the policy would be litigated in a bankruptcy court. Hartford should not be obligated to litigate in a forum that was not reasonably have foreseeable or expected at the time it issued the policies.