In re DAEWOO MOTOR AMERICA, INC., Debtor.

Daewoo Motor America, Inc., Plaintiff,

v.

Gulf Insurance Company, Defendant.

No. CV 03–05107 SVW.
No. LA 02–24411–BB.
Adversary No. 03–1781–BB.

United States District Court,
C.D. California.

Sept. 26, 2003.

David E. R. Woolley, Los Angeles, CA, for Daewoo Motor America, Inc.

G. Geoffrey Robb, Michael J. Cummins, Gibson, Robb & Lindh LLP, San Francisco, CA, for Gulf Insurance Company.

## ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE FROM THE BANKRUPTCY COURT

WILSON, District Judge.

### I. INTRODUCTION/FACTUAL AND PROCEDURAL BACKGROUND

Originally filed in the United States Bankruptcy Court for the Central District of California on May 22, 2003, this action seeks money damages under an insurance policy and a turnover order.

The facts leading up to this case are undisputed. Defendant Gulf Insurance Company ("Gulf"), a stock insurance company, issued an insurance policy to Plaintiff Daewoo Motor America, Inc. ("Daewoo") to cover its cargo, effective March 1, 2002 and for one year thereafter. On or about August 7, 2002, approximately 2,365 Daewoo vehicles at the Port of Newark, New Jersey were damaged in a hail storm. This kind of damage was covered by the Gulf insurance policy. The only question is how much money Gulf must pay Daewoo for the damage.

The insured value of the damaged vehicles under the insurance policy was $22,087,638.33. Because of the extent of the damage, plaintiff determined that it made more sense to sell the vehicles "as is" than to repair them. After notifying defendant, plaintiff obtained permission from the bankruptcy court to sell the vehicles at a public sale for $13,306,384.25. Plaintiff seeks $8,781,254.08, the difference between the insured value and the sale value, from Gulf.[1]

---

1. On October 14, 2002, Daewoo filed a claim, a proof of loss, a proof of interest and a

Defendant, however, disputes this amount. It contends that the insurance policy entitles plaintiff only to $1,180,000, the sum it would have taken plaintiff to repair the vehicles. In addition, this question of the proper sum is complicated by plaintiff's status as a debtor-in-possession at the time of the hail damage. On May 16, 2002, after plaintiff entered into the insurance contract but before the hail storm, plaintiff filed a voluntary petition under Chapter 11. Defendant notes that the vehicles had declined in value because of the bankruptcy proceedings. As a result, on July 23, 2002, the bankruptcy court permitted a sale of 2,200 of Daewoo's cars at auction for 51% of their MSRP. Thus, Defendant contends that Plaintiff is seeking a windfall by attempting to recover the full insured amount of the vehicles even though most of the decline in sale value is attributable to the Chapter 11 filing rather than the hail damage.

On December 19, 2002, defendant advanced plaintiff two million dollars as a loan while the insurance claim is pending.

Defendant Gulf Insurance Company moved to withdraw the reference from the bankruptcy court on September 22, 2003, on which date a hearing was held before this Court. As set forth below, this Court DENIES the Motion To Withdraw the Reference.

## II. DISCUSSION

28 U.S.C. § 157(d) states that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."

Whether to withdraw a case under § 157(d) is within the district court's discretion. The courts have identified a number of factors to consider in making this determination. The Ninth Circuit has said that the court should consider "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Security Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997). According to the Second Circuit, the factors may include:

1. whether the claim is core or non-core;

2. whether the claim is legal or equitable;

3. whether the claim is triable by a jury;

4. the most efficient use of judicial resources;

5. reduction of forum shopping;

6. conservation of estate and non-debtor resources; and

7. uniformity of bankruptcy administration.

*In re Enron Power Marketing, Inc.*, 2003 WL 68036, *6 (S.D.N.Y.), *citing Orion Pictures Corp. v. Showtime Networks*, 4 F.3d 1095, 1101 (2d Cir.1993), *cert. dismissed*, 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994).

Whether the claim is core or non-core is not dispositive of the motion to withdraw, but is merely a factor to consider. *In re Enron Power Marketing*, 2003 WL 68036, *6; *accord In re U.S. Airways Group, Inc.*, 296 B.R. 673 (E.D.Va.2003) (noting that, while some courts think the core/non-core determination is a threshold issue, "[t]he better view is that discretion-

demand for payment of $8,682,792.47 with Gulf. Subsequent to the sale of the vehicles, plaintiff amended the sum to $8,781,254.08.

ary withdrawal of reference should be determined on a case-by-case basis by weighing all the factors presented in a particular case, including the core/non-core distinction."). Nonetheless, it is helpful to make the core/non-core determination before considering the other factors because this determination implicates the efficiency and uniformity factors. *See Orion,* 4 F.3d at 1101. After making the core/non-core determination, the court should weigh the remaining factors. *Id.*

### (1) *Core/Non–Core*

28 U.S.C. § 157(b)(2) provides a non-exclusive list of types of core proceedings. Most of these types of proceedings are specific and clearly inapplicable in this case. The possibly relevant proceedings on the list are: "(A) matters concerning the administration of the estate"; "(E) orders to turn over property of the estate"; and "(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship...."

#### a) *Plaintiff's claim for money damages under the insurance policy is non-core.*

■ Items (A) and (O), the "catch-all" provisions, have been the subject of some debate concerning how broadly they should be construed. The Ninth Circuit is particularly strict on this issue. In *In re Castlerock Properties,* the court held that "state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)-(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions...." 781 F.2d 159, 162 (9th Cir.1986). In that case, the state law contract dispute was already pending when the petition was filed. *Id.* at 160.

■ The Ninth Circuit has stated its general test for making the core/non-core determination as follows: "Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'" *Security Farms v. Int'l Bhd. of Teamsters,* 124 F.3d 999, 1008 (9th Cir.1997). Other circuits, including the Third, Sixth, Seventh, Eighth, and Tenth have stated the same test. *See Halper v. Halper,* 164 F.3d 830, 836 & n. 7 (3d Cir.1999) (listing cases).

The Second Circuit is less stringent concerning the interpretation of the catch-all provisions. In *In re Best Products Co., Inc.,* the Second Circuit reiterated its conclusion that this jurisdictional grant ought to be broadly construed. 68 F.3d 26, 31 (2d Cir.1995). That court quoted with approval then-First Circuit Judge Breyer's analysis of the legislative history of section 157:

> [T]he legislative history of [section 157] indicates that Congress intended that "core proceedings" would be interpreted broadly, close to or congruent with constitutional limits. The sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings.

*Id., quoting In re Arnold Print Works, Inc.,* 815 F.2d 165, 168 (1st Cir.1987) (internal citations omitted).

In *Orion Pictures Corp. v. Showtime Networks,* the Second Circuit expressed caution about allowing just any contract action by the debtor to be considered as a core proceeding, even though it may literally "affect the administration of the estate." 4 F.3d 1095, 1102 (2d Cir.1993), *cert. dismissed,* 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994). *Orion* involved the prepetition breach of a prepetition contract, and the court found that it

was non-core. *Id.* But the Second Circuit panel in *In re Best Products* court rejected the appellant's argument that *Orion* stands for the proposition that "the 'catch-all' provisions of 157(b)(2) must be read narrowly." *Id.* at 32. "We merely found that allowing that subsection to encompass '[a]ny [breach of] contract action that the debtor would pursue ... [and that] would be expected to inure to the benefit of the debtor estate' would create an exception to *[Northern Pipeline Construction Co. v.] Marathon [Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)] that would swallow the rule." *Id., quoting Orion,* 4 F.3d at 1102 (emphasis added in *In re Best Products*). The court distinguished the ordinary prepetition contract action at issue in *Orion,* which was a non-core matter because its only relation to the bankruptcy case was that it could augment the size of the estate, from the prepetition subordination agreement at issue in *In re Best Products,* which was a core matter because it involved the priority rights of creditors. *Id.*

Although there is something of a circuit split regarding how broadly the catch-all provisions ought to be construed, the Ninth Circuit clearly comes down on the side of narrow construction.

Regarding the specific question of whether contract disputes are core matters, there seems to be a consensus that the prepetition breach of a prepetition contract is a non-core matter. *See, e.g., In re Gurga,* 176 B.R. 196 (9th Cir. BAP 1994). Similarly, there is good authority that postpetition breach of a postpetition contract of which the debtor is a party is a core matter. *See, e.g., In re Ben Cooper, Inc.,* 896 F.2d 1394, 1400 (2d Cir.1990). In *In re Ben Cooper,* the Second Circuit noted the Ninth Circuit's broad language in *In re Castlerock Properties* that contract claims are non-core unless they fit into a

specific section of § 157(b)(2), but expressed the view that the language would not apply in a postpetition contract case. *Id.* In *In re Cinematronics,* the Ninth Circuit held a dispute over a postpetition contract non-core, but it stressed that the debtor was not a party to the contract. 916 F.2d at 1450.

What is the trickier matter, and the case here, is the hybrid case—the postpetition breach of a prepetition contract. A 1995 A.L.R. article is instructive regarding the lack of consensus on this question. The article surveys cases in which the debtor has brought an action for the postpetition breach of a prepetition contract. Andrew M. Campbell, Annotation, *Action for Breach of Contract as Core Proceeding in Bankruptcy under 28 U.S.C.A. § 157(b),* 123 A.L.R. Fed. 103, § 10, 1995 WL 900222 (1995). Of those courts to consider this type of case, some found the contract disputes to be core, while others held them to be non-core. *Id.*

Some cases show the difficulty of deriving a general rule for hybrid cases. For instance, in *In re Enron Power Marketing,* a case involving several postpetition breaches of a prepetition contract, Judge Baer of the Southern District of New York rejected the plaintiff's contention that such hybrid cases were core proceedings. 2003 WL 68036, *6 (S.D.N.Y.). Judge Baer criticized cases cited by the plaintiff (including *In re Seatrain Lines, Inc.,* 198 B.R. 45 (S.D.N.Y.1996) and *In re Century Brass Prods., Inc.,* 1992 WL 22191 (D.Conn.1992), both of which Daewoo cites here) in which other district court judges in the Second Circuit—even another judge in the Southern District—found that hybrid cases were core proceedings as "involv[ing] reasoning that was explicitly rejected by the Second Circuit in *Orion* as well as by subsequent courts in this Circuit." 2003 WL 68036, *9. Judge Baer

found that "plaintiff's causes of action are essentially contract claims dressed up as bankruptcy claims." *Id.*

In *Halper v. Halper,* the Third Circuit found that a postpetition breach of a prepetition contract was a non-core matter. 164 F.3d at 838. In that case, unlike here, the debtor was not a party to the contract, a fact on which the court placed some stress. *Id.* Nonetheless, the court did not indicate that the contract's not involving the debtor was dispositive of the core/non-core determination.

In *In re United States Lines, Inc.,* the Second Circuit found that postpetition claims on a prepetition insurance contract were core. 197 F.3d 631, 639 (2d Cir. 1999). That case is distinguishable from this one, however, because the insurance policy was for indemnity insurance and would go toward paying a whole class of creditors. *Id.* at 638. "In *Orion,* we concluded that where the insurance proceeds would only augment the assets of the estate for general distribution, the effect on the administration of the estate was insufficient to render the proceedings core. Resolving the disputes over the [Protection & Indemnity] policies here has a much more direct impact on the core administrative functions of the bankruptcy court." *Id.*

As these cases and the split in the A.L.R. cases show, this is far from a clear-cut issue. Nonetheless, it is unlikely that this case would satisfy the Ninth Circuit's strict construction of the catch-all provisions. This action "do[es] not depend on bankruptcy laws for [its] existence and [ ] could proceed in another court." *Security Farms v. Int'l Bhd. of Teamsters,* 124 F.3d 999, 1008 (9th Cir.1997). As in *Orion,* resolution of this case will merely augment the assets of the estate rather than having a direct impact on the bankruptcy court's core administrative functions. *See In re*

*United States Lines,* 197 F.3d at 638. Therefore, though there are persuasive arguments on both sides, this matter should be treated as a non-core proceeding.

b) *This is not a turnover proceeding.*

■ Daewoo has also attempted to characterize this proceeding as a turnover proceeding, which would bring it within the ambit of core proceedings under 28 U.S.C. § 157(b)(2)(E). 11 U.S.C. § 542(a) provides that: "[A]n entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease ... shall deliver to the trustee, and account for, such property or the value of such property...." The Bankruptcy Appeals Panel of the Ninth Circuit has concluded that to receive the turnover of funds, the funds must be undisputed. *In re Gurga,* 176 B.R. at 199.

This claim cannot be characterized as a turnover because the funds are disputed. Gulf claims that it only owes Daewoo the value of repairing the cars, which is less than the $2 million advance Gulf has already lent to Daewoo, whereas Daewoo is claiming over $6 million over and above the advance.

(2) *Weighing of the Factors*

■ Even where a proceeding is non-core, the factors may weigh in favor of not withdrawing the reference. *In re Enron Power Marketing,* 2003 WL 68036, *6 (S.D.N.Y.). For instance, in *In re Enron Power Marketing,* the court found that because there were many adversary proceedings before the bankruptcy court involving issues similar to the ones involved in the proceeding at issue, it made sense to leave the proceeding in the bankruptcy court, at least for pretrial matters. *Id.* *10.

■ Here, although this is not a core matter, a number of factors support not withdrawing the reference. First, the bankruptcy court is familiar with the issues in this case, as it approved the sale of the non-damaged vehicles and of the damaged vehicles. The value of the cars will be at issue, as will the propriety of selling rather than repairing the damaged vehicles. The bankruptcy court has already considered these issues. During the hearing on whether to withdraw the reference, defense counsel indicated that this was a simple contract interpretation case in which no issues within the bankruptcy court's purview would be relevant. Defense counsel specifically denied that Defendant challenges the propriety of the sale of the damaged cars. But Defendant's Answer belies these representations. Defendant's Seventh Affirmative Defense alleges that "Daewoo failed to mitigate its damages." (Answer at 6.) This failure to mitigate damages can only refer to Plaintiff's failure to repair the cars in order to fetch a higher price than the "as is" sale yielded. In addition, Defendant's Eighth Affirmative Defense alleges that:

> In equity and at law, Daewoo's claim should be limited or precluded because of Daewoo's unclean hands and failure to perform its contractual obligations in good faith by failing to abide by the commercially reasonable and acceptable practice of repairing damage to the vehicles, by failing to agree to a reasonable estimate of damage, and by attempting to unjustly effect the adjustment of its claim in order to collect loss of value to its vehicles caused solely by its bankruptcy.

*Id.* This affirmative defense directly challenges Plaintiff's decision to sell the vehicles "as is" rather than repairing them and implies that this decision was motivated by Plaintiff's desire "to collect loss of value to its vehicles caused solely by its bankruptcy." As a result, it necessarily calls into question both the propriety of the sale and the reasons for its taking place. The bankruptcy court has already considered these questions and, therefore, not withdrawing the reference promotes judicial economy and uniform bankruptcy administration

■ Furthermore, there is no right to jury trial in this case. 28 U.S.C. § 157(e) provides that bankruptcy courts may conduct jury trials "if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." Thus, a jury trial is available in bankruptcy court over core proceedings. However, there may be no jury trial in bankruptcy court for non-core proceedings because such jury trials would violate the Seventh Amendment. The Seventh Amendment provides that "no fact tried by a jury [ ] shall be otherwise reexamined in any Court of the United States." Because the bankruptcy court's findings of fact in non-core proceedings are reviewed *de novo* by the district court, holding jury trials in bankruptcy court on non-core matters would necessarily result in reexamination of the jury's fact-finding, thereby violating the Seventh Amendment's prohibition on such reexamination. *See Orion Pictures Corp. v. Showtime Networks,* 4 F.3d 1095, 1101 (2d Cir.1993). Thus, where there is a right to jury trial in a non-core matter, that factor may weigh heavily in favor of withdrawing the reference so as to give the parties an opportunity for a jury trial in the district court.

Here, Gulf claims that this factor weighs in favor of withdrawing the reference, as a jury trial would not be available in bankruptcy court for a non-core proceeding. However, Gulf has made no jury demand. Fed.R.Civ.P. 38(b) provides that a jury demand must be made in writing "not later

than 10 days after the service of the last pleading directed to [an issue triable of right by a jury]." Local Bankruptcy Rule 9015–2(b)(1) similarly provides:

> A) Any party may demand a trial by jury of any issue triable by jury by filing and serving on the other parties a demand therefor in writing not later than 10 days after service of the last pleading directed to such issue . . . .
>
> B) Such demand shall include a statement that the party does or does not consent to a jury trial conducted by the bankruptcy court.

Gulf filed its answer, the "last pleading directed to such issue," on June 23, 2003, well over ten days ago, but it has not filed a jury demand.

Nonetheless, Gulf says it has not waived its right to jury trial "[b]ecause Gulf objected to the bankruptcy court possessing jurisdiction over this non-core case, because bankruptcy courts cannot hold jury trials in non-core matters and because Gulf did not consent to entry of final orders or judgments by the bankruptcy court." Reply at 8. Gulf cites the following footnote from a Northern District of New York case in support of this contention:

> Bankruptcy courts are constitutionally prohibited from holding jury trials in non-core matters. [Citation] Although it appears that Hartford did not file a jury demand, it is unclear whether it was obligated to do so where it consistently objected to the jurisdiction of the bankruptcy court and reserved its right to withdraw the reference to the bankruptcy court.

*In re Lawrence Group*, 285 B.R. 784, 789 n. 2 (N.D.N.Y.2002). But the rules would be a mockery if any party who objected to a court's jurisdiction were given permission to ignore them. Defendant knew that it had to file a timely Answer to Plaintiff's complaint and if Defendant intended to request a jury, it should have filed a jury demand within the ten-day period. By filing such a demand, Defendant would not have signaled consent to a jury trial's being held before the bankruptcy court; quite to the contrary, the jury demand would have been accompanied by Defendant's statement that it did not consent to a jury trial before the bankruptcy court. *See* Local Bankruptcy Rule 9015–2(b)(1)(B).

Had Defendant filed a jury demand but withheld its consent to the bankruptcy court's holding the jury trial, this Court would be obligated to withdraw the reference because of its finding that this is a non-core matter. In *In re Cinematronics*, the Ninth Circuit held that "bankruptcy courts cannot conduct jury trials on non-core matters, where the parties have not consented." 916 F.2d 1444, 1451 (9th Cir. 1990). However, by its failure to file a timely jury demand, Defendant waived its right to a jury trial.

This is not to say that there is no argument to be made for withdrawing the reference. Because this is a non-core case, the bankruptcy court's determinations will be subject to *de novo* review, which "could lead [the district court] to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court." *Orion*, 4 F.3d at 1101. Nonetheless, given the bankruptcy court's prior consideration of some of the issues in this matter and the lack of a jury demand, the factors support keeping this proceeding in the bankruptcy court.

## III. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Withdraw the Reference is DENIED.

IT IS SO ORDERED.