**In re RESIDENTIAL CAPITAL, LLC.**

**ResCap Liquidating Trust, Plaintiff,**

v.

**Primary Capital Advisors, LLC, Defendant.**

**Bankruptcy No. 12–12020 (MG).**
**Adversary No. 14–01999 (MG).**
**No. 14CV5224–LTS–HBP.**

United States District Court, S.D. New York.

Signed Sept. 16, 2014.

David Alan Beck, Carpenter Lipps & Leland LLP, Columbus, OH, Deborah Kovsky–Apap, Pepper Hamilton LLP, Southfield, MI, for Special Counsel.

Jessica G. Berman, Meyer, Suozzi, English & Klein, P.C., Garden City, Stefan W. Engelhardt, Todd M. Goren, Joel C. Haims, Gary S. Lee, Lorenzo Marinuzzi, Larren M. Nashelsky, Anthony Princi, Norman Scott Rosenbaum, Kayvan B. Sadeghi, Morrison & Foerster LLP, Lorraine S. McGowen, Orrick, Herrington & Sutcliffe LLP, Steven J. Reisman, Curtis, Mallet–Prevost, Colt & Mosle LLP, New York, NY, Donald H. Cram, Severson & Werson, PC, San Francisco, CA, George M. Geeslin, Atlanta, GA, Bonnie R. Golub, Weir & Partners, LLP, Philadelphia, PA,

John W. Smith T., Bradley Arant Boult Cummings LLP, Birmingham, AL, for Debtor.

Kenneth H. Eckstein, Douglas Mannal, Steven S. Sparling, Stephen Zide, Kramer Levin Naftalis & Frankel LLP, Robert J. Feinstein, Pachulski Stang Ziehl & Jones LLP, New York, Ronald J. Friedman, Robert D. Nosek, SilvermanAcampora LLP, Jericho, NY, for Creditor Committee.

Daniel J. Flanigan, Polsinelli Shughart, New York, NY, Roy Frederick Walters, Walters Bender Strohbehn & Vaughan, P.C., Kansas City, MO, for Trustee.

## MEMORANDUM ORDER

LAURA TAYLOR SWAIN, District Judge.

Plaintiff ResCap Liquidating Trust ("ResCap") filed this suit on May 13, 2014, as an adversary proceeding in the confirmed Chapter 11 bankruptcy case *In re Residential Capital, LLC*, No. 12–12020, which is currently pending before Judge Martin Glenn in the United States Bankruptcy Court for the Southern District of New York. Defendant Primary Capital Advisors, LLC ("PCA"), thereafter moved in this Court to withdraw the bankruptcy reference, and for transfer of the adversary proceeding to the District of Minnesota.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334.

The Court has carefully considered the parties' submissions. For the following reasons, the Court grants the Defendant's motion in its entirety.

### BACKGROUND

The following summary of Plaintiff's relevant factual allegations and the procedural history is drawn from the Amended Complaint, the exhibits thereto and court records.

Plaintiff ResCap Liquidating Trust is a Delaware statutory trust that is the successor-in-interest to Residential Funding Company ("RFC"). Prior to the time of its bankruptcy, RFC was in the business of acquiring and securitizing residential mortgage loans. (Am. Compl. at ¶ 2.) RFC's business model was premised on purchasing loans from "correspondent lenders" such as PCA and distributing them, either by pooling them with similar mortgage loans into residential mortgage-backed securitization trusts ("RMBS"), or by selling them to whole loan purchasers. (*Id.* at ¶ 3.) RFC alleges that, over the course of its relationship with PCA, PCA sold RFC over 3,900 mortgage loans, generating a combined principal balance in excess of $252 million. (*Id.* at ¶ 4.) The contracts through which PCA sold these loans ("the Contracts," *Id.* Ex. A) included nondiscretionary forum selection clauses mandating that all claims stemming from the contracts be brought in Minnesota:

> Each of the parties irrevocably submits to the jurisdiction of any state or federal court located in Hennepin County, Minnesota over any action, suit or proceeding to enforce or defend any right under this Contract or otherwise arising from any loan sale or servicing relationship existing in connection with this Contract, and each of the parties irrevocably agrees that all claims in respect of any such action or proceeding may be heard or determined in such state or federal court. Each of the parties irrevocably waives the defense of an inconvenient forum to the maintenance of any such action or proceeding ... Each of the parties further agrees not to institute any legal actions or proceedings against the other party or any director, officer, employee, attorney, agent or property of the other party, arising out

of or relating to this Contract in any court other than as hereinabove specified in this paragraph.

(*Id.*, Ex. A at ¶ 9.)

Over the course of RFC's relationship with PCA, RFC identified loans containing defects in violation of PCA's representations and warranties. (*Id.* at ¶ 6.) These defects, in turn, caused many of the loans to fall into default or serious delinquency, triggering massive losses in the RMBS into which the loans had been securitized. (*Id.* at ¶¶ 48–51.)

RFC and its affiliates ("the Debtors") filed voluntary chapter 11 bankruptcy petitions on May 14, 2012. (Am. Compl. at ¶ 58.) These cases were jointly administered before Judge Martin Glenn of the United States Bankruptcy Court of the Southern District of New York. Judge Glenn ultimately approved a global resolution which included five separate settlements of RFC's RMBS-related liabilities. (*Id.* at ¶ 83.) On December 11, 2013, Judge Glenn confirmed the Debtors' Second Amended Joint Chapter 11 Plan ("the Plan"), which became effective on December 17, 2013. (Declaration of John O'Shea Sullivan ("Sullivan Decl."), Exs. C (Confirmation Order) and D (Plan).) The Plan expressly reserved post-confirmation jurisdiction in the bankruptcy court of any matter of which Judge Glenn would have had jurisdiction during the bankruptcy cases. (*Id.* Ex. C at ¶ 66; Ex. D at pp. 110–12.) The Bankruptcy Court's confirmation order provided that the Debtors "transfer[red] and assign[ed] to the Liquidating Trust the Available Assets in accordance with Article IV.C of the Plan, which shall be deemed vested in the Liquidating Trust." (*Id.* Ex. C at p. 43, ¶ 24.) These assets include the claims that ResCap now brings against the various mortgage originators, including PCA. (*Id.* Ex. D at p. 4, ¶ 27.) PCA did not participate in the bankruptcy proceedings, nor did it file a proof of claim in those proceedings.

After approval of the plan, ResCap filed numerous complaints against lenders who had sold loans to RFC, all of which were substantially similar to the complaint in this case. (Def. Br. at 5.) Of these, at least 60 were filed in Minnesota, in both state and federal court. (*Id.*) Others, such as this action, were filed as adversary proceedings in the bankruptcy court. Mirroring the actions filed in Minnesota, this case asserts state law breach of contract and indemnification claims stemming from purported breaches of the representations and warranties made in the loan sale contracts between PCA and RFC prior to RFC's bankruptcy. (*See generally* Am. Compl.)

### Discussion

*Bankruptcy Jurisdiction*

In the motion practice pending before this Court, PCA seeks withdrawal of the reference of this adversary proceeding, arguing that it is outside of the court's bankruptcy-related jurisdiction and that it should be transferred to the United States District Court for the District of Minnesota in accordance with the contractual forum selection provision. ResCap argues that the reference is supported by both related-to and core bankruptcy jurisdiction, and that interests of efficiency and judicial economy warrant denial of the motion to withdraw the reference and the motion to transfer.

Congress has vested the district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.S. § 1334(b) (LexisNexis Supp.2014). Under 28 U.S.C. § 157(a), district courts are empowered to refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy

judges for the district." In the Southern District of New York, such matters are referred to the bankruptcy court pursuant to a standing order of reference. *See* Amended Standing Order of Reference M10–468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012). Under 28 U.S.C. § 157(b), "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C.S. § 157(b) (LexisNexis Supp.2014). Proceedings arising under title 11 or in a bankruptcy case are denominated as "core" matters. 28 U.S.C. § 157(b)(1). The bankruptcy court has the power to hear, and to issue proposed findings of fact and conclusions of law with respect to, matters that are merely "related to" the bankruptcy case and matters that are statutorily denominated as "core" but are outside the constitutionally-permissible scope of authority of a non-Article III tribunal such as the bankruptcy court. 28 U.S.C. § 157(c)(1); *See Executive Benefits Ins. Agency v. Arkison,* —— U.S. ——, 134 S.Ct. 2165, 2173–74, 189 L.Ed.2d 83 (2014).

■ A matter "aris[es] under" title 11 only when "the cause of action or substantive right claimed is created by the Bankruptcy Code." *In re Fairfield Sentry Ltd. Litig.,* 458 B.R. 665, 674 (S.D.N.Y.2011). Here, ResCap asserts state law claims for breach of contract and indemnification, which stem from the pre-petition contracts governing the sale of mortgages from PCA to RFC. The claims are rooted in state law, and are not based on the Bankruptcy Code. Therefore, they do not "arise under" title 11.

■ Similarly, ResCap's claims do not "arise in" a case under title 11. A case "aris[es] in" a title 11 proceeding when it is "not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy."

*Baker v. Simpson,* 613 F.3d 346, 351 (2d Cir.2010) (internal quotation omitted). Because ResCap's claims are based on pre-bankruptcy agreements entered into under state contract law, they indisputably would exist outside the context of the bankruptcy.

■ The only viable basis for jurisdiction under section 1334(b), therefore, is "related to" jurisdiction. The breadth of the court's "related to" jurisdiction after the bankruptcy plan has been confirmed is a point of dispute between the parties. PCA asserts that "once confirmation occurs, the bankruptcy court's jurisdiction shrinks" and the matter must have "a close nexus to the bankruptcy plan or proceeding" for the court to exercise bankruptcy jurisdiction. *Penthouse Media Group v. Guccione (In re General Media, Inc.),* 335 B.R. 66, 73 (Bankr.S.D.N.Y.2005) (*"General Media"*). ResCap counters that the scope of related to jurisdiction is far broader, encompassing all actions in which the outcome could have a "conceivable effect" on the bankrupt estate. *See, e.g. City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.,* 572 F.Supp.2d 314, 317 (E.D.N.Y.2008). The actual scope of post-confirmation "related to" jurisdiction is an open question in the Second Circuit. *See Allstate Ins. Co. v. CitiMortgage, Inc.,* No. 11 Civ.1927(RJS), 2012 WL 967582, at *5 (S.D.N.Y. March 13, 2012) (summarizing divided views). The Court need not decide this issue, however, as the adversary proceeding meets the more stringent "close nexus" standard.

The close nexus test has two elements. First, the party asserting related-to jurisdiction must demonstrate the existence of a close nexus by proving that the case affects an "integral aspect" of the bankruptcy proceedings, such as "the interpretation, implementation, consummation, execution, or administration of the confirmed

plan or incorporated litigation trust agreement." *In re Metro-Goldwyn-Mayer Studios Inc.*, 459 B.R. 550, 556 (Bankr. S.D.N.Y.2011). Second, the bankruptcy plan must expressly provide for retention of jurisdiction of the dispute. *See General Media*, 335 B.R. at 73.

ResCap's claims against PCA directly affect "the interpretation, implementation, consummation, execution or administration" of the Plan: the Plan expressly preserves RFC's claims and transfers them to the liquidating trust to prosecute. (Sullivan Decl. Ex. C at p. 43 ¶ 24.; Ex. D at p. 4 ¶ 27.) The purpose of this adversary proceeding is to prosecute such a transferred claim. Further, the Plan provides that RFC's creditors will receive a share of any recovery. (Sullivan Decl. Ex. D at p. 79.) Courts in this Circuit have held that such connections are sufficient to establish a "close nexus." *See e.g., Kirschner v. Grant Thornton LLP, et al. (In re Refco, Inc. Securities Litigation)*, 628 F.Supp.2d 432, 443 (S.D.N.Y.2008) ("This action, moreover, clearly shares a 'close nexus' to the Refco bankruptcy as the claims asserted ... are precisely those causes of action that were transferred by the Refco Debtors to the Litigation Trust pursuant to the Plan ... Any funds recovered by the Trustee in this case will be distributed to Refco's general unsecured creditors, thus further evidencing the 'close nexus' between the Trustee's claims and the bankruptcy proceeding"); *accord Neilson v. Straight-Out Promotions, LLC (In re Tyson)*, No. 03–41900(ALG), 2007 WL 2379624, at *3 (Bankr.S.D.N.Y. Aug. 17, 2007).

The Plan also explicitly provides for retention of jurisdiction of these claims, by preserving both "exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 cases and the Plan," and jurisdiction of "any Causes of Action preserved under the Plan." (Sullivan Decl.

Ex. D at pp. 110, 112.) ResCap's claims against PCA fall squarely within the scope of these provisions. (*See id.* at pp. 7–8, 65–68.)

In light of the fact that the claims in this action satisfy both prongs of the "close nexus" test, the Court has jurisdiction of this adversary proceeding, which is within the proper scope of this Court's Standing Order of Reference. The Court thus turns to the question of whether withdrawal of the reference is warranted.

*Withdrawal For Cause*

 28 U.S.C. § 157(d) authorizes the district court to withdraw "[a]ny ... proceeding referred under [28 U.S.C. § 157] ... on timely motion of any party, for cause shown." 28 U.S.C.S. § 157(d) (LexisNexis Supp.2014). Section 157(d) does not define the term "cause." The Second Circuit has, however, established a structure for determining whether cause for withdrawal exists the district court "should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn," and should then "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping and other related factors." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir.1993) (*"Orion Pictures"*).

As explained above, the claims asserted in the instant adversary proceeding are "related to" the bankruptcy, and thus are non-core. *See also Orion Pictures*, 4 F.3d at 1102 (holding that a "breach-of-contract action by a debtor against a party to a prepetition contract, who has filed no claim with the bankruptcy court, is non-core" notwithstanding the expectation that proceeds of the litigation would inure to the benefit of the estate and thus have an

impact on its administration). While the fact that the claim at issue is non-core would not necessarily warrant withdrawal of the reference at this pretrial stage [1], consideration of the other *Orion Pictures* factors in light of the contractual venue clause favors withdrawal of the reference of this proceeding. Although Judge Glenn has an unparalleled depth of familiarity with the underlying bankruptcy case, relevant settlements and the Plan, the issues at the heart of this adversary proceeding are contract law questions under Minnesota law, as to which the bankruptcy court does not have a unique advantage. Indeed, the venue provision calls for litigation in Minnesota, where ResCap has filed 60 similar actions; the courts in the contractually-specified forum will surely develop any requisite factual familiarity quite quickly. Thus, questions of efficient use of judicial resources do not favor even pretrial management of this proceeding by the bankruptcy court, and uniformity of bankruptcy administration is not a salient factor. Nor is there anything in the record indicating that litigating the proceeding in the contractually-specified forum will result in unwarranted delay or costs to the parties.

The prevention of forum shopping factor also strongly supports withdrawal of the reference and determination of the transfer issue at this time, given the clarity of the contractual venue provision. ResCap argues that this action should remain before Judge Glenn for reasons of efficiency and judicial economy, and cites a "strong public[ ] interest in centralizing bankruptcy proceedings in the bankruptcy court where the case is pending." (Pl. Br. at

24.) These concerns do not outweigh PCA's right to have the benefit of its bargain by litigating this action in the venue set out in the contractual forum selection clauses. It is apparent to the Court that ResCap favors Judge Glenn's case management approach in the circumstances of this case, and allowing ResCap to avoid litigating this action in Minnesota would condone tactical forum shopping. The Second Circuit has emphasized forum shopping as a tactic to be addressed—and prevented—in the consideration of a motion to withdraw the reference. *Orion Pictures*, 4 F.3d at 1101. Accordingly, there is cause to withdraw the reference of this adversary proceeding at this time, and PCA's motion is granted to the extent it seeks such relief.

*Transfer to District of Minnesota*

Pursuant to 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C.S. 1404(a) (LexisNexis 2012). PCA seeks an order directing the transfer of this case to the United States District Court for the District of Minnesota.

▌ The contracts between RFC and PCA contain mandatory forum selection clauses that require all claims to be brought in Minnesota. (Am. Compl. Ex. A at ¶ 9.) The clauses provide that the parties "irrevocably submit[ ] to the jurisdiction of any state or federal court located in Hennepin County, Minnesota, over any action, suit or proceeding . . . in connection

---

1. *Cf. Orion Pictures*, 4 F.3d at 1102 (Stating that, although a district court might find that the inability of a bankruptcy court to conduct a dispositive trial of a non-core case might constitute cause to withdraw a reference, "a district court . . . might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.").

with this Contract" and that the parties agree "not to institute any legal actions or proceedings against the other party ... in any court other than as hereinabove specified." *Id.* They also provide that the parties "irrevocably waive[ ] the defense of an inconvenient forum." *Id.* The Supreme Court has held that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases," *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas,* ─ U.S. ─, 134 S.Ct. 568, 581, 187 L.Ed.2d 487 (2013) (internal quotations omitted), and the Second Circuit has held that "forum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Magi XXI, Inc. v. Stato della Citta del Vaticano,* 714 F.3d 714, 721 (2d Cir.2013) (internal quotations omitted).

In cases where a valid forum selection clause applies, a Court considering a section 1404(a) transfer motion must accord the plaintiff's choice of forum no weight, and must eschew consideration of private interests in favor of public interest factors only. The plaintiff is, indeed, deemed to have exercised its venue choice at the time of contracting, and the court must "deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine,* 134 S.Ct. at 581–82. "[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 581. In this respect, the plaintiff is limited to demonstrating that public-interest factors require rejection of the contractually-specified forum. "Because these factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582. Res-

Cap has not carried its burden; this is not a sufficiently unusual case to warrant denial of the motion to transfer. ResCap has failed to identify any reason why this case is so exceptional that the valid forum selection clauses should be avoided. As PCA notes, it was RFC that inserted the forum selection clauses into these contracts to begin with. RFC conceded as much in its transfer motion briefing in the Minnesota actions. *See, e.g. Residential Funding Co., L.L.C. v. PNC Bank,* No. 13 Civ. 3498(JRT) (D.Minn.), Docket Entry No. 20 at 23. This fact forecloses any argument on ResCap's part that the forum selection clauses are unreasonable or overreaching.

Nor, for the reasons already discussed, is ResCap's argument that litigation in this district's bankruptcy court will promote efficiency availing. The Court has already withdrawn the reference. ResCap has identified no basis whatsoever for a determination that litigation of this proceeding in the District of Minnesota, where scores of similar cases are already pending, would be less efficient than litigation of the case in this Court. Finally, enforcement of the valid forum selection clause here "protects [the parties'] legitimate expectations and furthers vital interests of the justice system." *Atlantic Marine,* 134 S.Ct. at 581. Transfer to the District of Minnesota is thus appropriate, as the parties' valid forum selection clause warrants enforcement. Accordingly, the transfer prong of PCA's motion is granted as well.

CONCLUSION

For the foregoing reasons, the Defendant's motion to withdraw the bankruptcy reference and transfer the action to the District of Minnesota is granted in its entirety.

Determination of this motion also resolves Defendant PCA's motion to stay the bankruptcy court proceedings, which is hereby denied as moot.

This Memorandum Order resolves docket entries 1 and 18.

The Clerk of Court is requested to terminate all motions, effectuate the transfer of this adversary proceeding to the United States District Court for the District of Minnesota, and close this case.

SO ORDERED.